KELLY E. DUFORD, State Bar No. 295646
*kedwilliams@slatelawgroup.com*
CHRISTINE R. ROBLES, State Bar No. 307309
*crobles@slatelawgroup.com*
SLATE LAW GROUP
2131 Third Avenue
San Diego, CA 92101
Ph: (619) 546-4291
Fax: (619) 354-2449

Attorneys for Plaintiff
WHITESLATE, LLP DBA SLATE LAW
GROUP

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITESLATE, LLP DBA SLATE LAW GROUP,<br><br>        Plaintiff,<br><br>vs.<br><br>DEREK DAHLIN, an individual; BRIAN EVANS, individually, and as Chief Executive Officer of MANGO TECHNOLOGIES, INC. DBA CLICKUP; ROBERT SMITH, individually, and as Chief Financial Officer and Secretary of MANGO TECHNOLOGIES, INC. DBA CLICKUP; WES BRUMMETTE, individually, and as Agent for Service of Process of MANGO TECHNOLOGIES, INC. DBA CLICKUP; MANGO TECHNOLOGIES, INC. DBA CLICKUP; and DOES 1-100, INCLUSIVE,<br><br>        Defendants. | Case No. **'20CV1782 W    BGS**<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**1. Misappropriation of Trade Secrets (Federal Defend Trade Secrets Act)**<br><br>**2. Misappropriation of Trade Secret (California Uniform Trade Secrets Act)**<br><br>**3. Copyright Infringement**<br><br>**4. Vicarious Copyright Infringement**<br><br>**5. Contributory Copyright Infringement**<br><br>**6. Violation of California Computer Data Access and Fraud Act**<br><br>**7. Fraud Based on Intentional Misrepresentation**<br><br>**8. Fraud Based on Negligent Misrepresentation**<br><br>**9. Fraudulent Concealment**<br><br>**10. Breach of Contract**<br><br>**11. Breach of Covenant of Good Faith and Fair Dealing** |

12. **Breach of Duty of Loyalty**

13. **Aiding and Abetting Breach of Duty of Loyalty**

14. **Intentional Interference With Contractual Relations**

15. **Negligent Interference With Contractual Relations**

16. **Intentional Interference With Prospective Economic Relationship**

17. **Negligent Interference With Prospective Economic Relationship**

18. **Interference of Contract In At-Will Relationship**

19. **Unjust Enrichment**

20. **Unfair Business Practice**

**DEMAND FOR JURY TRIAL**

Plaintiff WHITESLATE, LLP DBA SLATE LAW GROUP, a limited liability partnership, alleges against Defendants DEREK DAHLIN, an individual; BRIAN EVANS, individually, and as Chief Executive Officer of MANGO TECHNOLOGIES, INC. DBA CLICKUP; ROBERT SMITH, individually, and as Chief Financial Officer and Secretary of MANGO TECHNOLOGIES, INC. DBA CLICKUP; WES BRUMMETTE, individually, and as Agent for Service of Process of MANGO TECHNOLOGIES, INC. DBA CLICKUP; MANGO TECHNOLOGIES, INC. DBA CLICKUP; and DOES 1-100, INCLUSIVE (collectively, "Defendants"), the following upon personal knowledge as to its own acts, and upon information and belief, based on the investigation conducted by its counsel, as to all other allegations:

## **PRELIMINARY ALLEGATIONS**

1.　Plaintiff WHITESLATE, LLP DBA SLATE LAW GROUP ("Slate" or "Plaintiff"), is a limited liability partnership and is now, and at all times mentioned in this Complaint was, a business entity organized, headquartered, and conducting business in San Diego County, California.

2.　Defendant DEREK DAHLIN ("Dahlin"), is an individual and is now, and at all times mentioned in this Complaint was, a resident of San Diego County, California.

3.　Defendant MANGO TECHNOLOGIES, INC. DBA CLICKUP ("ClickUp"), is a corporation and is now, and at all times mentioned in this Complaint was, a business entity organized in Delaware, headquartered in Tennessee, and conducting business in San Diego County, California.

4.　Defendant BRIAN EVANS ("Evans"), is an individual and is now, and at all times mentioned in this Complaint was, a resident of San Diego County, California.

5.　Defendant ROBERT SMITH ("Smith"), is an individual and is now, and at all times mentioned in this Complaint was, a resident of San Diego County, California.

6.　Defendant WES BRUMMETTE ("Brummette"), is an individual and is now, and at all times mentioned in this Complaint was, a resident of San Diego County, California.

7.　Slate is ignorant as to the true names and capacities of the defendants sued herein as DOES 1 through 100, and therefore sues these defendants by such fictitious names.  Slate will seek leave of Court to amend this Complaint to set forth the true names and capacities of such named defendants when their identities become known to it.

8.　Slate is informed and believes, and thereon alleges, that each of the aforementioned DOES is responsible in some manner for the events and happenings

herein referred to, and caused injury and damages proximately thereby to Slate as herein alleged.

9. Slate is informed and believes, and thereon alleges, that each of the defendants herein is, and was, at all times relevant to this action, the agent, employee, representative, and/or joint venturer of the remaining defendants and was acting within the course and scope of that relationship.

10. Slate is further informed and believes, and thereon alleges, that each of the defendants herein gave consent to, ratified, and authorized the acts alleged herein of each of the remaining defendants.

## JURISDICTION AND VENUE

11. This United States District Court, Southern District of California, has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Slate herein seeks redress for Defendants' violations arising under federal law.

12. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1836 et seq. for violations of federal trade secrets law, and pursuant to 28 U.S.C. § 1331 (federal question).

13. Slate's state law claims have a common nucleus of applicable facts and are so related to those under which this Court has original jurisdiction that they form part of the same case or controversy. Supplemental jurisdiction is therefore appropriate over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

14. This Court has personal jurisdiction over Defendants because all acts or omissions by Defendants, with respect to one or more causes of action, as well as Slate's harm arising from these acts or omissions, occurred in the County of San Diego, State of California.

15. This Court has personal jurisdiction over Defendant DOES 1 through 100, inclusive, because each DOE Defendant, at all times relevant to this Complaint, was the agent, employee, and/or representative of Defendants, acting within the course and scope of that relationship and/or capacity of Defendants. Each of the

fictitiously named defendants are responsible in some manner for the events and occurrences alleged by Slate, and damages were directly and proximately caused by the conduct, acts, and omissions of these defendants. The conduct of these DOE Defendants occurred during their course of work in the County of San Diego, State of California, and such course of work within the County of San Diego results in the DOE Defendants' reasonable expectation of being sued within the County of San Diego, State of California.

16. Venue is proper in the United States District Court for the Southern District of California under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events, acts or omissions giving rise to the claims set forth herein occurred in this District.

17. The allegations of this Complaint stated on information and belief are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## FACTUAL ALLEGATIONS

### Dahlin's Independent Contractor Work With Slate Law Group

18. In and around February 2020, Mr. Tony Mauriello, Slate's Lead Transactional Attorney and Head of Transactional Department, mentioned to Slate that a former student and colleague could be a good fit for Slate's transactional team.

19. On or around the beginning of March 2020, Slate and Dahlin began initial introductory conversations about his interest in joining Slate Law Group as an Associate Transactional Attorney.

20. On or about March 9, 2020, Slate conducted a formal interview with Dahlin for the Associate Transactional Attorney.

21. On or about March 10, 2020, Slate made an offer for full-time employment as Associate Transactional Attorney to Dahlin.

22. Dahlin declined the full-time offer from Slate.

23. Dahlin did not accept the full-time offer because he was employed with

another company and wanted to stay on with that employer.

24.    However, Dahlin stated he would agree to work for Slate as a 1099 independent contractor.

25.    Dahlin stated he would be happy to perform work as a 1099 so long as malpractice was covered.

26.    Slate obliged Dahlin's request and brought Dahlin on to work as a 1099 independent contractor.

27.    Dahlin's first day of work as an independent contractor for Slate was March 19, 2020.

### The Non-Disclosure and Confidentiality Agreement

28.    As part of Slate's onboarding process, Slate presented Dahlin with a Non-Disclosure and Confidentiality Agreement ("NDA"), which he was required to sign in order to work with Slate.

29.    Dahlin carefully reviewed the NDA.

30.    After reviewing but before signing the NDA, Dahlin proposed certain edits to the NDA.

31.    Slate accepted Dahlin's edits to the NDA.

32.    Dahlin signed and returned the revised NDA, which now incorporated Dahlin's edits, on March 25, 2020. The NDA signed by Dahlin on March 25, 2020, is attached hereto and incorporated by reference as **Exhibit A**.

33.    Dahlin began working for Slate as an independent contractor on March 25, 2020.

34.    Slate has since adopted the NDA that Dahlin edited and signed as the new official NDA going forward.

35.    All employees and independent contractors are required to sign Slate's NDA in order to work for Slate.

36.    The NDA contains the following pertinent provisions, italicized here for emphasis:

a. "**1.1.** Confidential and Proprietary Information. For purposes of this Agreement, ***"Confidential, Business and Proprietary Information"*** *shall mean any data or information that is disclosed by the Disclosing Party [(Slate)] to a Receiving Party [(Dahlin)] which is not generally known to the public, in tangible or intangible form, and is of value to Slate Law Group, and relates to Slate Law Group's clients*, client lists, product plans, designs, costs, prices, suppliers, finances, marketing plans, business strategies and opportunities, research, development, know-how, personnel training and management, and/or any other disclosed information the Disclosing Party considers to be "Confidential" or otherwise notifies Receiving Party as being Confidential. Confidential Information shall also include all data and information provided on behalf of Slate Law Group to Recipient [(Dahlin)] on or prior to the Effective Date….

b. **1.2.** Trade Secret Information. For purposes of this Agreement, *"**Trade Secret Information**" shall be given its broadest possible interpretation and shall mean any and all documents, information or other data (whether recorded or otherwise), in whole or in part, which concerns Slate Law Group or its business and which (i) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use*, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. *Such Trade Secret Information includes, without limitation, information related to Slate Law Group's client lists, potential client lists,* business techniques, strategies and methodologies, marketing plans, handbooks, suppliers, service

providers, advertising, contracts, forecasts, pricing, practices, techniques, business plans, financial plans, research, development, purchasing, accounting, programming and/or relationship development or any other tangible or intangible information and data provided to Recipient [(Dahlin)] through Slate Law Group….

c. **1.5.** <u>Competitive Consulting</u>. For the purposes of this Agreement, *"**Competitive Consulting or Employment**" is defined as consultation, employment, client, and/or legal services that may be rendered in the same areas where in Slate Law Group operates, which may interfere with performance of Recipient [(Dahlin)], draw from Slate Law Group clientele and/or leads, or disrupt Recipient's [(Dahlin's)] ability to competently complete established goals and or services that Slate Law Group engaged Recipient [(Dahlin)] for. Additionally, Competitive Consulting is that which would harm or deter active and/or future business of Slate Law Group or take business opportunities that would otherwise go to Slate Law Group….*

d. **4. Non-Use of Trade Secret Information, Confidential Business and Proprietary Information.** *Recipient [(Dahlin)] shall not, without the prior written approval of a Representative of Slate Law Group in each instance, or unless otherwise expressly permitted by the terms of this Agreement, use, publish, or otherwise cause the use of any Trade Secret Information and/or Confidential and Proprietary Information by its Representatives, directly or indirectly, for Recipient's [(Dahlin's)] benefit and/or to the detriment of Slate Law Group.* The Parties understand and acknowledge that Recipient's [(Dahlin's)] obligations under this Agreement with regard to nonuse of Confidential and Proprietary

Information and/or Trade Secret Information shall remain in effect for as long as such information shall remain confidential and non-public or as long as required under applicable law, whichever shall be longer….

e. **8. Competition During Engagement or Employment.** *The Parties understand and acknowledge that Competitive Consulting is not permitted* and may be grounds for termination of this Agreement at the sole discretion of Slate Law Group, *and is grounds for an immediate request by Slate Law Group for adequate remedies such as injunctive relief and/or monetary damages.*

f. **11. Injunctive Relief.** *Recipient [(Dahlin)] understands and acknowledges that any disclosure or misappropriation of any of Trade Secret Information and/or Confidential Information and Proprietary Information in violation of this Agreement may cause Slate Law Group irreparable harm*, the amount of which may be difficult to ascertain and, therefore, agrees that Slate Law Group shall have the right to apply to a court of competent jurisdiction for an order restraining any further disclosure or misappropriation, and for such other relief as Slate Law Group shall deem appropriate. This right of Disclosing Party [(Slate)] shall be in addition to the remedies otherwise available to Slate Law Group at law or in equity."

37. Dahlin acknowledged that the Confidential Information referred to in the NDA included unique and valuable trade secrets belonging to Slate.

38. Dahlin agreed to protect Slate's Confidential Information pursuant to Section 3 of the NDA.

39. Specifically, Dahlin agreed not to "disclose, or cause the use or disclosure of any Confidential and Proprietary Information and/or Trade Secret

Information for any purpose other than to diligently carry out the negotiations and undertakings concerning the Transaction contemplated under this Agreement. Recipient shall carefully restrict access of Confidential Information to those of Slate Law Group's Representatives, directors, officers, employees, consultants, contractors, and agents who require such access in order to participate on behalf of Recipient in the current Transaction, dealings, contract or agreement, or the advisability thereof, with Slate Law Group."

40. Section 8 of the NDA provides that, while employed by Slate, Dahlin would not engage in, be employed by, serve as a consultant, or provide confidential business and proprietary information to any business that is competitive with any business in which Slate is engaged.

41. In Section 11 of the NDA, Dahlin recognized that a breach of any aspect of the NDA would cause Slate to sustain irreparable, unquantifiable harm.

42. By signing the NDA, Dahlin agreed that, in the event of a breach of the NDA, Slate would have the right to seek an injunction, among other things, in order to redress such harm.

### Dahlin's Full-Time Employment With Slate Law Group

43. Soon after Dahlin started working as an independent contractor for Slate, Dahlin and Slate began negotiating for Dahlin to move over to full-time employment with Slate Law Group.

44. Dahlin wanted to move full-time to Slate because he no longer wanted to continue working for the other company with whom he was also employed.

45. Dahlin informed Slate that he was unhappy with his environment at his previous firm, where he accused such firm of fraud and other misdeeds.

46. Dahlin was also contemplating suing the other employer for breach of his employment contract.

47. On April 14, 2020, Slate extended another offer to Dahlin for full-time employment as Associate Transactional Attorney with Slate Law Group.

48. Slate made the offer in the form of an offer letter, with an anticipated start date of April 21, 2020.

49. The next day, on April 15, 2020, Dahlin accepted full-time employment with Slate Law Group by signing and returning the offer letter.

50. By signing and returning the offer letter, Dahlin effectively agreed to and accepted Slate Law Group's terms of employment.

51. Slate's terms of employment included the terms contained in the NDA that Dahlin signed on March 25, 2020.[1]

**Dahlin's Work For and Relationship With Slate's Client ClickUp**

52. On April 21, 2020, Dahlin started full-time work at Slate.

53. Dahlin was assigned a caseload of clients with varying transactional matters.

54. One client Dahlin was assigned was a client by the name of ClickUp.

55. ClickUp was a client retained by Slate from Slate's buyout of DuFord Law's book of business after DuFord Law closed .

56. ClickUp had been a client of DuFord Law since on or around October 3, 2019.

57. Before DuFord Law, ClickUp had retained Cooley LLP as counsel.

58. ClickUp stated to DuFord Law that it was unhappy with its then counsel, Cooley LLP, due to Cooley LLP's lack of communication and excessive costs.

59. Dahlin had been working on ClickUp's matters since on or around

---

[1] As part of Dahlin's onboarding process for full-time employment, Dahlin was required to sign a number of documents through a Web application called Gusto. As part of onboarding, Gusto automatically provided Dahlin with an outdated NDA, which included an arbitration clause. However, as of January 1, 2020, mandatory employment arbitration agreements were rendered statutorily invalid in California. Accordingly, Slate does not seek to pursue the invalid arbitration clause in the Gusto-automated NDA.

April 9, 2020, when he was still an independent contractor for Slate.

60.    Dahlin continued to work on ClickUp's matters after he became a full-time associate with Slate.

61.    Dahlin worked on ClickUp's matters under the supervision of Ms. DuFord and with the aid of other associates.

62.    On April 9, 2020, Dahlin sent the officers of ClickUp, Defendant Evans, chief executive officer; Defendant Smith, chief financial officer and secretary; and Defendant Brummette, agent for service of process, an introductory email explaining that he would be overseeing ClickUp's matters and that he would be ClickUp's main point of contact.

63.    Dahlin worked on a variety of tasks for ClickUp, including a reseller agreement, cease and desist, sublease agreement, and software as a service (SaaS) agreement.

64.    From on or around April 9, 2020, through June 2020, Dahlin worked on ClickUp's matters.

65.    As the same time, Dahlin was building a working relationship and rapport with ClickUp's officers, Evans, Smith, and Brummette.

66.    On May 14, 2020, ClickUp's officer, Brummette, sent a message to Dahlin on Slate's client correspondence portal, Slack, asking Dahlin if he would be interested in working for ClickUp as its in-house counsel.

67.    Dahlin responded that he was interested in exploring the in-house counsel role with ClickUp.

68.    Dahlin had an informational interview with ClickUp the next morning on May 15, 2020.

69.    On the afternoon of May 15, 2020, another ClickUp associate messaged Dahlin on Slate's Slack portal, "We got the good news and I'm happy to hear that we might be able to get you full-time."

70.    ClickUp then requested that Dahlin meet with another attorney to

interview for the in-house role.

71.     On or around May 21, 2020, Dahlin brought up ClickUp's proposal to join its in-house team with Kelly DuFord ("DuFord"), the Founder and Managing Partner of Slate Law Group.

72.     Ms. DuFord reminded Dahlin that ClickUp was a client of Slate Law Group, that he was bound to the NDA he signed, and that he was not permitted to take on ClickUp as a personal client or depart to ClickUp to become its in-house counsel.

73.     On June 1, 2020, Brummette messaged Dahlin on Slate's Slack portal for ClickUp, informing Dahlin that he created a ClickUp email to use for ClickUp's own correspondence portals.

74.     Brummette advised Dahlin that his Slate account was merely a "guest" account with "super limited" access.

75.     Brummette informed Dahlin that his ClickUp email would allow Dahlin full access to ClickUp's Slack spaces.

76.     Brummette also provided Dahlin access to ClickUp's Human Resources space.

77.     After receiving his ClickUp email, Dahlin instructed Brummette to close out Dahlin's Slate email from ClickUp's Slack spaces.

78.     During the time that Dahlin was negotiating employment with ClickUp, Dahlin was accessing Slate's work product, including but not limited to documents and templates, and providing them to ClickUp.

79.     Slate's work product, documents, and templates are kept in a password-protected Cloud storage.

80.     Slate's work product, documents. and templates are only accessible to Slate employees.

81.     The employees that are given access to Slate's work product, documents, and templates have gone through the interview process with Ms.

DuFord and are vetted.

82. Slate's work product, documents, and templates are not publicly available.

83. Slate provides access to its work product, documents, and templates following an onboarding process.

84. All employees with access to Slate's work product, documents, and templates are required to sign Slate's NDA.

85. When an employee leaves Slate's employment, whether voluntarily or involuntarily, Slate immediately removes that individual's access to its work product, documents, and templates.

86. On June 16, 2020, Dahlin sent an email to Ms. DuFord and Michael Weiner ("Weiner"), Slate's then Lead Litigation Attorney and Partner, with the subject "Resignation from Slate Law Group."

87. In the email, Dahlin tendered his resignation from Slate Law Group.

88. Dahlin also attached a formal letter of resignation to the June 16, 2020 email.

89. In the letter, Dahlin tendered his resignation from Slate and provided two weeks' notice, with formal resignation to be effective on June 30, 2020.

90. In his resignation letter, Dahlin stated that he "plan[ned] to head back East and take some time off of work."

91. After receiving this letter, Ms. DuFord and Mr. Weiner asked Dahlin to stay on for a few more days through the Fourth of July holiday.

92. Dahlin stated that he had a flight scheduled to Vermont on July 2, 2020, but he could work for Slate through then.

93. On June 21, 2020, Dahlin called Mr. Weiner over FaceTime.

94. During the FaceTime calls on June 21, 2020, Dahlin informed Mr. Weiner that ClickUp offered Dahlin a job as in-house attorney.

95. Dahlin further informed Mr. Weiner that he intended to take the job

with ClickUp.

96. Mr. Weiner instructed Dahlin to speak with Ms. DuFord about moving to a client.

97. By resigning from Slate to work with ClickUp, Dahlin effectively breached his terms of employment with Slate, as outlined in the NDA.

## Civil Conspiracy

98. Beginning on or about May 14, 2020, Dahlin, ClickUp, Evans, Smith, Brummette, and DOE Defendants, and each of them, in their individual and corporate capacities, knowingly and willfully conspired and agreed among themselves to poach Dahlin from Slate Law Group, to obtain Slate's trade secrets and confidential business and proprietary information, and to take Slate's contract templates and work-product for ClickUp's use.

99. Defendants messaged one another without Slate's knowledge in an effort to get Dahlin to resign from Slate and move over to ClickUp.

100. Dahlin met in secret with ClickUp and its officers to interview and get more information about the in-house role.

101. Dahlin provided Slate's contracts and work-product, all owned and created by Slate, to ClickUp so that ClickUp could use it for its own business, without Slate's knowledge or consent.

102. The principles of "Work for Hire" governed Dahlin's employment with Slate at all times, both as an independent contractor and as a full-time employee.

103. In other words, any and all works created by Dahlin while employed with Slate were owned by Slate.

104. Throughout the entire process, Defendants' actions were done with a malicious intent to cause harm to Slate's business by poaching one of Slate's attorneys and wrongfully taking Slate's trade secrets and work-product for its own use.

# FIRST CAUSE OF ACTION

## Misappropriation of Trade Secrets

## Violation of Federal Defend Trade Secrets Act, 18 U.S.C. § 1836

## (Against All Defendants)

105.   Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint as though they were set forth in full herein.

106.   The Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, defines "trade secrets" as "all forms and types of financial, business, scientific, technical, economic, or engineering information" if the owner "has taken reasonable measures to keep such information secret" and "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."

107.   Slate has expended a significant amount of time, energy and resources to create confidential, proprietary information and trade secrets that derive independent economic value from not being known to the public or other persons who could obtain economic value from their disclosure or use, which include but are not limited to its contracts, document templates, and other work-product, as well as Slate's client list and database.

108.   Dahlin acknowledged and agreed that he would have access to, and did have access to, Slate's confidential, proprietary information and trade secrets, which are vital to Slate's business.

109.   Slate's confidential, proprietary information and trade secrets are the subject of efforts that were reasonable under the circumstances to maintain their secrecy. Slate's confidential, proprietary information and trade secrets were kept in a cloud-based database that could only be accessed with credentials provided by Slate. All individuals who are given access to Slate's confidential, proprietary

information and trade secrets are vetted by Slate before being given access. Individuals are required to undergo Slate's onboarding processes in order to be given access to Slate's confidential, proprietary information and trade secrets. Slate requires that all individuals who are given access to Slate's confidential, proprietary information and trade secrets to sign and abide by Slate's NDA, which requires the individual to keep Slate's confidential, proprietary information and trade secrets in the strictest confidence. Slate immediately revokes access to its confidential, proprietary information and trade secrets from individuals who leave Slate's employ voluntarily or involuntarily.

110. Dahlin had a duty to maintain the secrecy of, and to safeguard, the confidential, proprietary information and trade secrets of Slate.

111. Defendants unlawfully and improperly retained, used, disclosed or otherwise misappropriated Slate's confidential, proprietary information and trade secrets, including but not limited to unlawfully accessing and retaining such information from Slate's office and electronic systems for Dahlin's and ClickUp's beneficial use, unlawfully using and disclosing such information to unauthorized individuals or entities, and unlawfully using such information to solicit, induce, recruit and/or encourage Slate's existing employee, Dahlin, to leave his employment relationship with Slate and to come work with Defendants ClickUp, Brummette, Smith, and Evans.

112. Slate did not consent to Defendants' unlawful retention, use, disclosure or otherwise misappropriation of its confidential, proprietary information and trade secrets, and Dahlin did so in violation of his duties and agreements with Slate.

113. As a direct and proximate result of Defendants' misappropriation of Slate's confidential, proprietary information and trade secrets, Slate has sustained substantial damages, and Defendants have been unjustly enriched, in an amount to be determined at trial.

114. Defendants' actions in unlawfully misappropriating and using Slate's

confidential, proprietary information and trade secrets for their own gain was willful, wanton, malicious, intentional, and was taken with reckless disregard to the rights of Slate; therefore, Slate will seek an award of punitive and exemplary damages in an amount to be determined at trial.

115. Defendants' actions have caused and will continue to cause Slate irreparable harm if not preliminarily and permanently enjoined. Unless and until enjoined and restrained by this Court, Defendants and others acting in concert therewith, will continue the acts complained of herein. In light of the difficulty of measuring both damages and future harm, Slate has an inadequate remedy at law and is entitled to an order enjoining the conduct of Defendants and those acting in concert therewith.

## SECOND CAUSE OF ACTION

### Misappropriation of Trade Secrets

### Violation of California Uniform Trade Secrets Act, California Civil Code § 3426 et seq.

### (Against All Defendants)

116. Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint as though they were set forth in full herein.

117. Dahlin was in possession of certain trade secrets that are protected under the California Uniform Trade Secrets Act, California Civil Code §§ 3426 et seq. These trade secrets include confidential and proprietary information regarding Slate's contracts, document templates, and other work-product, as well as Slate's client list and database.

118. The above-described trade secrets are of substantial value to Slate. They are of independent economic value because they are based on information not generally known within the trade or by other persons or entities who could obtain economic value from their use of disclosure, and because of Slate's experience and

diligence in developing its own contracts, document templates, and other work-product, as well as its a client base.

119. Slate made reasonable efforts to ensure that the above-described trade secrets remained secret. Slate's confidential, proprietary information and trade secrets were kept in a cloud-based database that could only be accessed with credentials provided by Slate. All individuals who are given access to Slate's confidential, proprietary information and trade secrets are vetted by Slate before being given access. Individuals are required to undergo Slate's onboarding processes in order to be given access to Slate's confidential, proprietary information and trade secrets. Slate requires that all individuals who are given access to Slate's confidential, proprietary information and trade secrets to sign and abide by Slate's NDA, which required the individual to keep Slate's confidential, proprietary information and trade secrets in the strictest confidence. Slate immediately revokes access to its confidential, proprietary information and trade secrets from individuals who leave Slate's employ voluntarily or involuntarily.

120. While employed by Slate, Dahlin was entrusted with the above-described trade secrets so he could perform his job effectively for Slate's benefit.

121. Dahlin misappropriated the above-described trade secrets. Dahlin utilized Slate's contract documents and other work-product, as well as Slate's client information, to engage in a business and employment relationship with Slate's client ClickUp.

122. Defendants Evans, Smith, Brummette, and ClickUp acquired Slate's trade secrets and confidential and proprietary information that they knew or had reason to know were acquired by improper means.

123. Defendants have used, and unless restrained by this Court, will continue to use these trade secrets to compete unfairly with Slate.

124. As a direct and proximate result of the trade secret misappropriation described herein, Slate has suffered damages, and if Defendants' conduct is not

stopped, Slate will continue to suffer damages, including, general, consequential, incidental, and special damages, all as yet not ascertained, but in an amount according to proof at trial, which exceeds the jurisdictional minimum of this Court.

125. Defendants performed the foregoing acts, conduct, and omissions intentionally, maliciously, and oppressively, with the intent and design to damage Slate. By reason of this conduct, Slate is entitled to recover punitive and exemplary damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

**Copyright Infringement**

**Violation of Common Law**

**(Against All Defendants)**

126. Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint as though they were set forth in full herein.

127. Through its conduct alleged herein, Defendants have infringed Slate's copyrights in its works, including, without limitation, be reproducing, distributing, and/or publishing the copyrighted contracts and other work-product drafted and created by Slate Law Group, without Slate's knowledge or authorization, in violation of common law.

128. Each infringement by Defendants of Slate's exclusive rights in and to Slate's copyrighted contracts and work-product constitutes a separate and distinct act of infringement.

129. Defendants Evans, Smith, and Brummette personally participated in the wrongful conduct of infringing on Slate's copyrighted contracts and work-product. Through their manipulative actions, Defendants Evans, Smith, and Brummette induced Dahlin to unlawfully reproduce, reformat, and distribute Slate's copyright protected materials.

130. At all pertinent times, Slate was the producer and owner of the

copyrighted contracts and work-product illegally and improperly reproduced and distributed by Defendants.

131. Defendants reproduced, reformatted, and distributed Slate's copyrighted contracts and work-product by and through servers and/or other hardware owned, operated, and/or controlled by Defendant ClickUp.

132. Defendants knew or should have reasonably known they did not have permission to exploit Slate's copyrighted contracts and work-product and further knew or should have known their acts constituted copyright infringement.

133. Defendants engaged in intentional, knowing, negligent, or willfully blind conduct sufficient to demonstrate that they engaged actively in the improper collection and distribution of Slate's copyrighted contracts and work-product.

134. Defendants acted with willful blindness and reckless disregard of Slate's copyrights.

135. Because of their wrongful conduct, Defendants are liable to Slate for copyright infringement. Slate suffers and will continue to suffer substantial losses, including, but not limited to, damage to its business reputation and goodwill.

136. By reason of all of the foregoing facts, Slate also is entitled to Defendants' profits attributable to the infringement for each separate infringement.

137. As a direct and proximate result of Defendants' violations of the Copyright Act, all copies of Slate's copyrighted contracts and work-product made or used in violation of Slate's rights, and all products derived from Defendants' unauthorized products made or used in violation of Slate's rights, must be impounded and destroyed.

138. As a direct and proximate result of the foregoing acts and conduct, Slate has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Slate is informed and believes and on that basis avers that unless enjoined and restrained by this Court, Defendants will continue to infringe Slate's rights in and to Slate's

copyrighted works. Such infringement will, among other irreparable harm and damages, cause Slate irreparable harm by damaging its goodwill and excellent reputation, causing Slate to lose the benefits to which it is entitled based upon its ownership of the copyrights or exclusive rights under copyright in Slate's copyrighted contracts and work-product and based upon Slate's extensive investment of time, effort and money in, among other things, creating Slate's copyrighted contracts and work-product. Slate is therefore entitled to the issuance of a temporary restraining order, and to preliminary and permanent injunctive relief as against Defendants, and each of them, from engaging in their wrongful acts, all as alleged herein.

## FOURTH CAUSE OF ACTION

### Vicarious Copyright Infringement

### Violation of Common Law

### (Against All Defendants)

139.    Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint as though they were set forth in full herein.

140.    Without authorization, Defendants reproduced, distributed, and/or publicly used Slate's copyrights contracts and work-product, directly infringing Slate's copyrighted works.

141.    Defendants Evans, Smith, and Brummette personally participated in the wrongful conduct of infringing on Slate's copyrighted contracts and work-product.

142.    Defendants were actually or constructively aware or should have been aware or were willfully blind to the infringing activity.

143.    Defendants were able to control or completely end the illegal and improper infringement but failed and refused to do so.

144.    Defendants contributed materially to the infringement.

145. Defendants received direct financial gain and profit from those infringing activities.

146. The acts, omissions, and conduct of all Defendants constitute vicarious copyright infringement.

147. By reason of Defendants' and each of their acts of vicarious infringement as alleged above, Slate has suffered and will continue to suffer substantial damages to its business in an amount to established at trial, as well as additional general and special damages in an amount to be established at trial.

148. Due to Defendants' acts of vicarious copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would have not otherwise realized but for their infringement of the Slate's copyrighted contracts and work-product. Slate is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of the copyrighted contracts and work-product, an amount to be established at trial.

149. Slate is informed and believes and thereon alleges that Defendants, and each of them, have committed acts of infringement alleged herein with actual or constructive knowledge of Slate's rights such that Slate is entitled to a finding of willful infringement.

## FIFTH CAUSE OF ACTION

### Contributory Copyright Infringement

### Violation of Common Law

### (Against All Defendants)

150. Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint as though they were set forth in full herein.

151. Defendants and/or other unknown individuals, without authorization, reproduced and distributed Slate's copyrighted contracts and work-product through Defendants' business portals, directly infringing Slate's copyrighted works.

152. Defendants, and each of them, knowingly induced, participated in, aided and abetted in and resultantly profited from the illegal distribution and/or public use of the copyrighted contracts and work-product as alleged herein.

153. Defendants Evans, Smith, and Brummette personally participated in the wrongful conduct of infringing on Slate's copyrighted contracts and work-product.

154. Defendants were aware, should have been aware, or were willfully blind to the infringing activity.

155. Defendants had the obligation and ability to control and stop the infringements but failed to do so.

156. Defendants materially contributed to the infringement.

157. Defendants received direct financial benefits from the infringements.

158. All Defendants had actual, constructive or should have had actual or constructive knowledge of the infringing acts.

159. The conduct, acts, and omissions of all Defendants demonstrate contributory copyright infringement.

160. Due to Defendants' acts of contributory copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would have not otherwise realized but for their infringement of the Slate's copyrighted contracts and work-product. Slate is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of the copyrighted contracts and work-product, in an amount to be established at trial.

161. Defendants, and each of them, have committed acts of infringement alleged herein with actual or constructive knowledge of Slate's rights such that Slate is entitled to a finding of willful infringement.

//

## <u>SIXTH CAUSE OF ACTION</u>

## Violation of California Computer Data Access and Fraud Act
## California Penal Code § 502
## (Against Defendant Dahlin)

162.    Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint as though they were set forth in full herein.

163.    Dahlin has violated California Penal Code § 502(c)(1) by knowingly accessing and without permission altering, damaging, deleting, destroying or otherwise using data, documents, information and files from Slate's computer(s), computer system(s) or computer network(s) in order to devise or execute a scheme or artifice to defraud, deceive, or extort, and/or to wrongfully control or obtain money, property or data, including Slate's confidential, proprietary information and trade secrets.

164.    Dahlin has violated California Penal Code § 502(c)(2) by knowingly accessing and without permission taking, coping, or making use of data, documents, information and files from Slate's computer(s), computer system(s) or computer network(s), including but not limited to Slate's confidential, proprietary information and trade secrets.

165.    As a direct and proximate result of Dahlin's unlawful conduct within the meaning of California Penal Code § 502, Dahlin has caused damage to Slate in an amount to be proven at trial.

166.    Slate is informed and believes that the aforementioned acts of Dahlin were intentional, willful and malicious in that Dahlin's acts described herein were done with the deliberate intent to injure Slate's business and thereby gain a competitive advantage by using such unlawfully obtained confidential, proprietary information and trade secrets to compete with Slate by joining Slate's client's in-house legal team. Accordingly, Slate will seek recovery of punitive damages.

167.    Pursuant to California Penal Code § 502(e), Slate is also entitled to

recover its reasonable attorneys' fees.

168. Slate has also suffered irreparable injury from these acts, and due to the continuing threat of such injury, has no adequate remedy at law, entitling Slate to injunctive relief.

### SEVENTH CAUSE OF ACTION

**Fraud Based on Intentional Misrepresentation**

**Violation of California Civil Code §§ 1572, 1709, 1710, and Common Law**

**(Against Defendant Dahlin)**

169. Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint as though they were set forth in full herein.

170. Acting intentionally and/or recklessly, Dahlin made representations to Slate that were false and material in Slate's decision to hire Dahlin, keep Dahlin as an employee, and allow Dahlin to access Slate's client base.

171. In March 2020, Dahlin communicated to Slate by email that he was very interested in working for/with Slate.

172. In May 2020, after he accepted full-time employment with Slate, Dahlin informed Slate in a Slack message that he was optimistic that Slate could build "something solid and scalable" with him on Slate's transactional team.

173. Dahlin had knowledge at the time that these representations were false because Dahlin had actively begun recruiting with ClickUp soon after he began full-time employment with Slate.

174. Slate was unaware that Dahlin's representations were false and justifiably relied on them.

175. As a result, Slate was damaged in that it lost both an employee and a client by Dahlin resigning and committing to employment with Slate's client, ClickUp. Slate has incurred damages and attorneys' fees and expenses in taking action to remedy Dahlin's fraud.

176. Dahlin acted willfully and knowingly in his actions and representations, and his conduct was oppressive and malicious for the purpose of wrongfully protecting himself and damaging Slate. Slate is entitled to punitive damages for such conduct.

## EIGHTH CAUSE OF ACTION

### Fraud Based on Negligent Misrepresentation

### Violation of California Civil Code § 1710 and Common Law

### (Against Defendant Dahlin)

177. Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint as though they were set forth in full herein.

178. Dahlin made representations to Slate that were false and material in Slate's decision to hire Dahlin, keep Dahlin as an employee, and allow Dahlin to access Slate's client base.

179. In March 2020, Dahlin communicated to Slate by email that he was very interested in working for/with Slate.

180. In May 2020, after he accepted full-time employment with Slate, Dahlin informed Slate in a Slack message that he was optimistic that Slate could build "something solid and scalable" with him on Slate's transactional team.

181. Dahlin had no reasonable grounds for believing the representations were true when he made them because he was actively recruiting with another company.

182. Dahlin intended that Slate rely on his representations.

183. Slate was unaware that Dahlin's representations were false and reasonably relied on them.

184. Slate's reliance on Dahlin's representations was a substantial factor in causing its harm.

185. As a result, Slate was damaged in that it lost both an employee and a

client by Dahlin resigning and committing to employment with Slate's client, ClickUp. Slate has incurred damages and attorneys' fees and expenses in taking action to remedy Dahlin's fraud.

## NINTH CAUSE OF ACTION

### Fraudulent Concealment

### Violation of Civil Code § 1710 and Common Law

### (Against Defendant Dahlin)

186. Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint as though they were set forth in full herein.

187. Dahlin and Slate were in an employment relationship.

188. In March 2020, Dahlin communicated to Slate by email that he was very interested in working with/for Slate.

189. In early May 2020, Dahlin informed Slate in a Slack message that he was looking to build and scale Slate's transactional practice.

190. Dahlin intentionally failed to disclose to Slate that he was getting poached by Slate's client, ClickUp, in May 2020.

191. In June 2020, Dahlin disclosed to Slate that he was resigning from his employment with Slate, but intentionally failed to disclose that he was leaving Slate to start employment with Slate's client, ClickUp.

192. Slate did not know of the concealed facts.

193. Dahlin intended to deceive Slate by concealing the facts.

194. Had Slate known of the omitted information, Slate would have behaved differently by not hiring Dahlin or assigning him to any of its clients.

195. As a result, Slate was damaged in that it lost both an employee and a client by Dahlin resigning and committing to employment with Slate's client, ClickUp. Slate has incurred damages and attorneys' fees and expenses in taking action to remedy Dahlin's fraud.

196.  Dahlin's concealment of important facts relating to his employment was a substantial factor in Slate's harm.

197.  Dahlin acted willfully and knowingly in his actions and representations, and his conduct was oppressive and malicious for the purpose of wrongfully protecting himself and damaging Slate. Slate is entitled to punitive damages for such conduct.

## TENTH CAUSE OF ACTION

### Breach of Contract

### (Against Defendant Dahlin)

198.  Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint as though they were set forth in full herein.

199.  On March 25, 2020, Slate and Dahlin entered into an NDA in order for Dahlin to engage in independent contractor attorney work for Slate.

200.  On April 15, 2020, Slate and Dahlin entered into a written employment contract, wherein Slate hired Dahlin as an Associate Transactional Attorney.

201.  Pursuant to their agreements, Slate and Dahlin agreed, among other things, that Dahlin would not compete with Slate or use Slate's trade secret information or its confidential business and proprietary information for Dahlin's benefit or to the detriment of Slate.

202.  Slate has performed all conditions, covenants, and promises required to be performed on its part in accordance with the terms and conditions of the written employment contract and nondisclosure agreement, except such conditions, covenants, and promises, the performance of which have been excused by reason of Dahlin's acts and omissions.

203.  By engaging in the acts and omissions alleged herein, Dahlin materially breached the written employment contract and nondisclosure agreement.

204.  As a direct and proximate cause of the acts and omissions of Dahlin,

Slate has suffered damages, including, general, consequential, incidental, and special damages, all as yet not ascertained, but in an amount according to proof at trial, which exceeds the jurisdictional minimum of this Court.

## ELEVENTH CAUSE OF ACTION

### Breach of Covenant of Good Faith and Fair Dealing

### (Against Defendant Dahlin)

205. Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint as though they were set forth in full herein.

206. As set forth above, Dahlin entered into a contract and NDA with Slate for employment as an Associate Transactional Attorney.

207. An implied term of the contract for employment that Dahlin entered into with Slate was the covenant of good faith and fair dealing by each party to not do anything that would deprive the other of the benefit of the contract. The implied covenant meant that Dahlin was duty bound from doing anything that would make performance of the contract detrimental to Slate. Dahlin promised to work for Slate and in doing so, to utilize Slate's trade secrets and confidential business and proprietary information in order to perform his duties. Additionally, Dahlin promised not to usurp business from Slate by use of Slate's trade secrets and confidential business and proprietary information.

208. Dahlin breached the implied covenant of good faith and fair dealing when he utilized Slate's trade secrets and confidential business and proprietary information to engage in a business relationship with Slate's client ClickUp.

209. As a direct and proximate cause of Dahlin's breach of the covenant of good faith and fair dealing, Slate has suffered damages, including, general, consequential, incidental, and special damages, all as yet not ascertained, but in an amount according to proof at trial, which exceeds the jurisdictional minimum of this Court.

## TWELFTH CAUSE OF ACTION

### Breach of Duty of Loyalty

### (Against Defendant Dahlin)

210.   Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint as though they were set forth in full herein.

211.   As a result of his employment with Slate and his execution of the employment contract and NDA, Dahlin owed Slate a duty of loyalty to protect, preserve, and enhance Slate's interest, and to place those interests before his own when transacting in similar business.

212.   Dahlin breached his duty of loyalty to Slate. Specifically, while still employed by Slate, Dahlin breached his duty of loyalty by misappropriating Slate's trade secrets and confidential business and proprietary information for the purpose of accessing and using such information to compete with Slate.

213.   As a direct and proximate result of Dahlin's breach of the duty of loyalty described herein, Slate has suffered damages, and if Dahlin's conduct is not stopped, Slate will continue to suffer damages, including, general, consequential, incidental, and special damages, all as yet not ascertained, but in an amount according to proof at trial, which exceeds the jurisdictional minimum of this Court.

214.   Dahlin performed the foregoing acts, conduct, and omissions intentionally, maliciously, and oppressively, with the intent and design to damage Slate. By reason of this conduct, Slate is entitled to recover punitive and exemplary damages in an amount to be determined at trial.

## THIRTEENTH CAUSE OF ACTION

### Aiding and Abetting Breach of Duty of Loyalty

### (Against Defendants Evans, Smith, Brummette, and ClickUp)

215.   Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in

this Complaint as though they were set forth in full herein.

216. Dahlin breached his duty of loyalty to Slate by misappropriating Slate's trade secrets and confidential business and proprietary information to engage in a new business and employment relationship with Slate's client, ClickUp, to his benefit and to the detriment of Slate.

217. Defendants Evans, Smith, Brummette, and ClickUp, were aware that Dahlin planned to perform this wrongful act and encouraged or substantially assisted Dahlin in committing this wrongful act, and this encouragement or assistance was a substantial factor in causing harm to Slate.

218. Defendants Evans, Smith, and Brummette personally participated in the wrongful conduct of aiding and abetting with Dahlin for Dahlin to breach his duty of loyalty to Slate.

219. As a direct and proximate result of Defendants' conduct, Slate's business was disrupted, and Slate has suffered damages, and if Defendants' conduct is not stopped, Slate will continue to suffer damages, including, general, consequential, incidental, and special damages, all as yet not ascertained, but in an amount according to proof at trial, which exceeds the jurisdictional minimum of this Court.

## FOURTEENTH CAUSE OF ACTION

### Intentional Interference with Contractual Relations

### (Against Defendants Evans, Smith, Brummette, and ClickUp)

220. Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint as though they were set forth in full herein.

221. At all times mentioned herein, there existed a valid employment contract and NDA between Slate and Dahlin regarding the terms of his employment and the use of Slate's trade secrets and confidential business and proprietary information.

222. Defendants, and each of them, had knowledge of the existence of the employment relationship between Slate and Dahlin.

223. The acts and omissions engaged in by Defendants, and each of them, as herein alleged, were intentionally designed to disrupt the contractual employment relationship between Slate and Dahlin.

224. Defendants, and each of their acts and omissions as herein alleged, actually resulted in the disruption of the contractual employment relationship between Slate and Dahlin.

225. Defendants Evans, Smith, and Brummette personally participated in the wrongful conduct of intentionally interfering with Slate's contractual employment relationship with Dahlin.

226. As a direct and proximate result of the acts and omissions of Defendants, and each of them, Slate has suffered damages, including, general, consequential, incidental, and special damages, all as yet not ascertained, but in an amount according to proof at trial, which exceeds the jurisdictional minimum of this Court.

227. Defendants performed the foregoing acts, conduct, and omissions intentionally, maliciously, and oppressively, with the intent and design to damage Slate. By reason of this conduct, Slate is entitled to recover punitive and exemplary damages in an amount to be determined at trial.

### FIFTEENTH CAUSE OF ACTION

### Negligent Interference with Contractual Relations

### (Against Defendants Evans, Smith, Brummette, and ClickUp)

228. Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint as though they were set forth in full herein.

229. At all times mentioned herein, there existed a valid employment contract and NDA between Slate and Dahlin regarding the terms of his employment

and the use of Slate's trade secrets and confidential business and proprietary information.

230. Defendants, and each of them, knew or should have known of the existence of the contractual employment relationship between Slate and Dahlin. By virtue of their attorney-client relationship with Slate as alleged herein, Defendants, and each of them, owed Slate a duty to refrain from engaging in conduct that could reasonably and foreseeably result in the disruption of Slate's contractual relationship with Dahlin.

231. The acts and omissions engaged in by Defendants, and each of them, as herein alleged, resulted in the actual disruption of the contractual employment relationship between Slate and Dahlin.

232. Defendants Evans, Smith, and Brummette personally participated in the wrongful conduct of interfering with Slate's contractual employment relationship with Dahlin.

233. As a direct and proximate result of the acts and omissions of Defendants, and each of them, Slate has suffered damages, including, general, consequential, incidental, and special damages, all as yet not ascertained, but in an amount according to proof at trial, which exceeds the jurisdictional minimum of this Court.

## SIXTEENTH CAUSE OF ACTION

### Intentional Interference with Prospective Economic Relationship
### (Against Defendants Evans, Smith, Brummette, and ClickUp)

234. Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint as though they were set forth in full herein.

235. At all times mentioned herein, there existed an economic relationship between Slate and Dahlin by virtue of their valid employment contract and nondisclosure agreement, which outlined the terms of Dahlin's employment and the

use of Slate's trade secrets and confidential business and proprietary information. This economic relationship carried with it the probability of a future economic benefit to Slate.

236. Defendants, and each of them, had knowledge of the existence of the economic relationship between Slate and Dahlin.

237. The acts and omissions engaged in by defendants, and each of them, as herein alleged, were intentionally designed to disrupt the economic relationship between Slate and Dahlin.

238. Defendants, and each of their acts and omissions as herein alleged actually resulted in the disruption of the economic relationship between Slate and Dahlin.

239. Defendants Evans, Smith, and Brummette personally participated in the wrongful conduct of intentionally disrupting the economic relationship between Slate and Dahlin.

240. As a direct and proximate result of the acts and omissions of defendants, and each of them, Slate has suffered damages, including, general, consequential, incidental, and special damages, all as yet not ascertained, but in an amount according to proof at trial, which exceeds the jurisdictional minimum of this Court.

241. Defendants performed the foregoing acts, conduct, and omissions intentionally, maliciously, and oppressively, with the intent and design to damage Slate. By reason of this conduct, Slate is entitled to recover punitive and exemplary damages in an amount to be determined at trial.

## SEVENTEENTH CAUSE OF ACTION

### Negligent Interference with Prospective Economic Relationship

### (Against Defendants Evans, Smith, Brummette, and ClickUp)

242. Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in

this Complaint as though they were set forth in full herein.

243. At all times mentioned herein, there existed an economic relationship between Slate and Dahlin by virtue of their valid employment contract and nondisclosure agreement, which outlined the terms of Dahlin's employment and the use of Slate's trade secrets and confidential business and proprietary information. This economic relationship carried with it the probability of a future economic benefit to Slate.

244. Defendants, and each of them, knew or should have known of the existence of the economic relationship between Slate and Dahlin. By virtue of their relationship with Slate as alleged herein, defendants, and each of them, owed Slate a duty to refrain from engaging in conduct, which could reasonably and foreseeably result in the disruption of Slate's economic relationship with Dahlin.

245. The acts and omissions engaged in by defendants, and each of them, as herein alleged, resulted in the actual disruption of the economic relationship between Slate and Dahlin.

246. Defendants Evans, Smith, and Brummette personally participated in the wrongful conduct of disrupting the economic relationship between Slate and Dahlin.

247. As a direct and proximate result of the acts and omissions of defendants, and each of them, Slate has suffered damages, including, general, consequential, incidental, and special damages, all as yet not ascertained, but in an amount according to proof at trial, which exceeds the jurisdictional minimum of this Court.

## EIGHTEENTH CAUSE OF ACTION

### Interference of Contract In At-Will Relationship

### (Against Defendants Evans, Smith, Brummette, and ClickUp)

248. Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in

this Complaint as though they were set forth in full herein.

249. Upon information and belief, Evans, Smith, and Brummette intentionally and wrongfully interfered with the at-will employment relationship between Slate and Dahlin, and that Evans, Smith, and Brummette solicited and/or induced Dahlin to leave Slate's employ on June 21, 2020.

250. Defendants Evans, Smith, and Brummette personally participated in the wrongful conduct of interfering with the at-will employment relationship between Slate and Dahlin.

251. By Defendants' acts described above, Defendants intentionally and maliciously disrupted and interfered with Slate's ability to secure the economic advantage through its ongoing contractual employment relationship with Dahlin.

252. Upon information and belief, Defendants' acts of interference with Slate's contractual employment relationship with Dahlin were independently wrongful in that Dahlin was encouraged or induced to leave Slate's employ, previously enjoyed by Slate, and further undermined Slate's contractual employment relationship by taking away staff necessary to operate Slate's business.

253. Through a course of conduct starting on or around April 21, 2020, Evans, Smith, and Brummette solicited Dahlin to leave Slate's employ contrary to Dahlin's duty of loyalty owed to Slate.

254. With full knowledge of Dahlin's employment with Slate, Evans, Smith, and Brummette induced Dahlin to leave Slate's employ, which ultimately contributed to Dahlin's resignation with Slate Law Group. Furthermore, Evans, Smith, and Brummette acted with knowledge of Dahlin's breach of the duty of loyalty, all while purporting to be loyal clients of Slate.

255. Upon information and belief, Defendants' independently wrongful conduct, as alleged herein, induced Dahlin to leave his employment with Slate Law Group.

256. Slate had a reasonable probability of being involved in and realizing

substantial economic benefit from the at-will relationship with Dahlin and in realizing economic benefit through its trade secrets and confidential business and proprietary information and business opportunities interfered with or diverted by Defendants.

257.  As a direct and proximate result of the acts and omissions of Defendants, and each of them, Slate has suffered damages, including, general, consequential, incidental, and special damages, all as yet not ascertained, but in an amount according to proof at trial, which exceeds the jurisdictional minimum of this Court.

258.  Defendants performed the foregoing acts, conduct, and omissions intentionally, maliciously, and oppressively, with the intent and design to damage Slate. By reason of this conduct, Slate is entitled to recover punitive and exemplary damages in an amount to be determined at trial.

## NINETEENTH CAUSE OF ACTION

### Unjust Enrichment

### (Against Defendant Dahlin)

259.  Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint as though they were set forth in full herein.

260.  Dahlin has received the benefit of Slate's trade secrets and confidential business and proprietary information, as set forth above.

261.  Dahlin's misappropriation of Slate's trade secrets and confidential business and proprietary information caused Dahlin to receive a benefit that he otherwise would not have achieved.

262.  Dahlin misappropriated the benefit of Slate's trade secrets and confidential business and proprietary information without providing any benefit or compensation to Slate.

263.  Dahlin has been unjustly enriched, and it would be inequitable for

Dahlin to be allowed to retain the benefits of Slate's trade secrets and confidential business and proprietary information without being ordered to compensate Slate.

## TWENTIETH CAUSE OF ACTION

### Unfair Business Practice

### Violation of California Business and Professions Code § 17200

### (Against Defendant Dahlin)

264.    Slate hereby repeats, realleges, refers to, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint as though they were set forth in full herein.

265.    Dahlin breached his duty of loyalty owed to Slate, and he intentionally interfered with Slate's business relationship with its clients, as alleged above. These acts, among others alleged herein, constituted unlawful and unfair business practices within the meaning of California Business and Professions Code §§ 17200 et seq.

266.    Dahlin will profit and continue to profit as a direct and proximate result of his wrongful conduct.

267.    As a direct and proximate result of Dahlin's conduct, Slate's business was disrupted and Slate has suffered damages, and if Dahlin's conduct is not stopped, Slate will continue to suffer damages, including, general, consequential, incidental, and special damages, all as yet not ascertained, but in an amount according to proof at trial, which exceeds the jurisdictional minimum of this Court.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Slate respectfully prays for relief and judgment against Defendants, jointly and severally, as follows:

1.    For general damages in an amount in excess of the minimum jurisdiction of this Court according to proof;

2.    For special damages in an amount in excess of the minimum jurisdiction of this Court according to proof;

1        3.     For costs of the suit herein;

2        4.     For punitive and exemplary damages pursuant to California Civil Code

3              § 3294, and/or as otherwise allowed by law;

4        5.     For such further and other relief as the Court deems just and proper.

Dated: September 10, 2020     Respectfully submitted,

WHITESLATE, LLP DBA SLATE LAW GROUP

By: */s/ Kelly E. DuFord*
      KELLY E. DUFORD
      CHRISTINE R. ROBLES
      Attorneys for PLAINTIFF
      WHITESLATE, LLP DBA SLATE LAW GROUP

# __DEMAND FOR JURY TRIAL__

Demand is made for a jury trial on all issues so triable.

Dated: September 10, 2020        Respectfully submitted,

WHITESLATE, LLP DBA SLATE LAW GROUP

By: */s/ Kelly E. DuFord*
       KELLY E. DUFORD
       CHRISTINE R. ROBLES
       Attorneys for PLAINTIFF
       WHITESLATE, LLP DBA SLATE LAW GROUP