1  COOLEY LLP
   SUMMER J. WYNN (240005)
2  (swynn@cooley.com)
   JAYME B. STATEN (317034)
3  (jstaten@cooley.com)
   4401 Eastgate Mall
4  San Diego, California  92121-1909
   Telephone:  +1 858 550 6000
5  Facsimile:  +1 858 550-6420

6  COOLEY LLP
   JASMIN F. MOTLAGH (311639)
7  (jmotlagh@cooley.com)
   1333 2nd Street, Suite 400
8  Santa Monica, California  90401-4100
   Telephone:  +1 310 883 6400
9  Facsimile:  +1 310 883 6500

10 Attorneys for Defendants
   DEREK DAHLIN, BRIAN EVANS,
11 ROBERT SMITH, WES BRUMMETTE and
   MANGO TECHNOLOGIES, INC. DBA
12 CLICKUP

13              UNITED STATES DISTRICT COURT

14            SOUTHERN DISTRICT OF CALIFORNIA

15

16 WHITESLATE, LLP DBA SLATE          Case No. 3:20-cv-01782-W-BGS
   LAW GROUP,
17                                    **MEMORANDUM OF POINTS AND**
                                      **AUTHORITIES IN SUPPORT OF**
18             Plaintiff,             **DEFENDANTS' MOTION TO DISMISS**
                                      **PLAINTIFF'S COMPLAINT**
19        v.

20 DEREK DAHLIN, an individual;       Date:    January 25, 2021
   BRIAN EVANS, individually, and as  Time:    N/A
21 Chief Executive Officer of MANGO   Dept.:   3C
   TECHNOLOGIES, INC. DBA             Judge:   Thomas J. Whelan
22 CLICKUP; ROBERT SMITH,
   individually, and as Chief Financial **NO ORAL ARGUMENT**
23 Officer and Secretary of MANGO     **PURSUANT TO LOCAL RULE**
   TECHNOLOGIES, INC. DBA
24 CLICKUP; WES BRUMMETTE,
   individually, and as Agent for Service of [*Filed Concurrently with*
25 Process of MANGO TECHNOLOGIES,     *Memorandum of Points and*
   INC. DBA CLICKUP; MANGO            *Authorities; Declaration of Summer J.*
26 TECHNOLOGIES, INC. DBA             *Wynn; and [Proposed] Order]*
   CLICKUP; and DOES 1-100,
27 INCLUSIVE,                         Date Action Filed: September 10, 2020
                                      Trial Date:   None set
28             Defendants.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................ 1

II.     RELEVANT BACKGROUND .................................................................... 2

III.    LEGAL STANDARD ................................................................................. 4

IV.     ARGUMENT .............................................................................................. 4

    A.    Slate Fails To State A Claim For Trade Secret Misappropriation ........ 4

        1.    Slate Has Not Pled A Protectable Trade Secret ....................... 5

        2.    Slate Has Not Pled Misappropriation. ...................................... 9

        3.    Slate's Attempt To Allege Damages Fails. ............................. 11

    B.    CUTSA Preemption Bars The Twelfth Through Twentieth
        Causes Of Action As A Matter Of Law ............................................. 11

        1.    The Duty Of Loyalty Claims Are Preempted ......................... 12

        2.    The Interference Claims Are Preempted ................................. 13

        3.    The Unjust Enrichment And UCL Claims Are Preempted ..... 15

    C.    Slate Fails To State A Claim For Copyright Infringement ................ 16

        1.    The Common Law Copyright Claims Are Preempted ............ 17

        2.    Slate Also Fails To Plead Copyright Infringement. ............... 18

        3.    The Secondary Liability Theories Also Fail. .......................... 19

    D.    Slate Fails To State A Claim Under The California Computer
        Data Access and Fraud Act ............................................................... 20

    E.    Slate Fails To State A Claim For Fraud ............................................ 22

        1.    The Economic Loss Doctrine Bars The Fraud Claims ........... 22

        2.    Slate Does Not Plead A Misrepresentation Of Fact. ............. 23

        3.    Slate Does Not Plead Concealment Or Reliance ................... 25

    F.    Slate Fails To State A Claim For Breach Of Contract ...................... 26

    G.    Slate Fails To State A Claim For Breach Of The Covenant Of
        Good Faith And Fair Dealing. .......................................................... 29

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

i

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
3:20-CV-01782-W-BGS**

## TABLE OF CONTENTS

Page

H.   Slate Fails To State A Claim For Breach Of Duty Of Loyalty............ 30

I.   Slate Fails To State A Claim For Interference..................................... 31

  1.   The Fourteenth, Fifteenth And Eighteenth Causes of
       Action Fail As A Matter of Law Because Dahlin's
       Employment With Slate Was At-Will. ...................................... 32

  2.   The Prospective Economic Relationship Claims Also Fail. .... 33

J.   Slate Fails To State A Claim For Unjust Enrichment.......................... 34

K.   Slate Fails To State A Claim For Unfair Business Practice. .............. 35

L.   Slate Has Not Pled – And Could Not Plead – Facts Sufficient To
     State Any Claim Against Evans, Smith Or Brummette In Their
     Individual Capacities............................................................................ 37

M.   Smith Is Not Subject To Personal Jurisdiction. .................................. 39

V.   CONCLUSION ......................................................................................... 40

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ................................................................. 21

*AccuImage Diagnostics Corp v. Terarecon, Inc.*,
  260 F. Supp. 2d 941 (N.D. Cal. 2003) ...................................................... 41

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*,
  819 F. Supp. 2d 1001 (E.D. Cal. 2011) .......................................... *passim*

*AirDefense, Inc. v. AirTight Networks, Inc.*,
  2006 WL 2092053 (N.D. Cal. July 26, 2006) ........................................... 17

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
  666 F. Supp. 2d 1109 (C.D. Cal. 2009) .................................................... 43

*Alta Devices, Inc. v. LG Elecs., Inc.*,
  343 F. Supp. 3d 868 (N.D. Cal. 2018) ............................................... 5, 6, 7

*Anokiwave, Inc. v. Rebeiz*,
  2018 WL 4407591 (S.D. Cal. Sept. 17, 2018) ............................... 13, 14, 33

*Audigier Brand Mgmt. v. Perez*,
  2012 WL 5470888 (C.D. Cal. Nov. 5, 2012) ............................................. 24

*Aurora World, Inc. v. Ty Inc.*,
  719 F. Supp. 2d 1115 (C.D. Cal. 2009) .................................................... 19

*Barney v. Burrow*,
  558 F. Supp. 2d 1066 (E.D. Cal. 2008) .................................................... 29

*Benke v. Departure Agency, Inc.*,
  2011 WL 13129964 (C.D. Cal. Aug. 11, 2011) ......................................... 18

*Bioriginal Food & Sci. Corp. v. Biotab Nutraceuticals Inc.*,
  2013 WL 6572573 (C.D. Cal. Dec. 13, 2013) ........................................... 11

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ................................................................... 39

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
  219 F. Supp. 3d 984 (N.D. Cal. 2017) ........................................................ 8

*Bristol-Myers Squibb Co. v. Superior Court of California*,
  137 S. Ct. 1773 (2017) ............................................................................. 42

Cooley LLP
ATTORNEYS AT LAW
SAN DIEGO

i

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
3:20-CV-01782-W-BGS

*In re Brocade Commc'ns Sys., Inc. Derivative Litig.*,
    615 F. Supp. 2d 1018 (N.D. Cal. 2009)........................................................32, 33

*Casey v. U.S. Bank Nat. Assn.*,
    127 Cal. App. 4th 1138 (2005)................................................................33

*Chang v. Wells Fargo Bank, N.A.*,
    2020 WL 1694360 (N.D. Cal. Apr. 7, 2020) .......................................33

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) ...........................................................28, 40

*Davis v. Metro Prods., Inc.*,
    885 F.2d 515 (9th Cir. 1989) ................................................................43

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
    2015 WL 12731929 (C.D. Cal. May 8, 2015)....................................40, 42

*Desaigoudar v. Meyercord*,
    223 F.3d 1020 (9th Cir. 2000) ................................................................4

*Digital Envoy, Inc. v. Google, Inc.*,
    370 F. Supp. 2d 1025 (N.D. Cal. 2005)................................................17

*Dreifort v. DJO Glob. Inc.*,
    2019 WL 5578240 (S.D. Cal. Oct. 28, 2019)........................................39

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010)...............................................................36

*E. & J. Gallo Winery v. Instituut Voor Landbouw-En
    Visserijonderzoek*,
    2018 WL 2463869 (E.D. Cal. June 1, 2018)........................................12

*Edwards v. Arthur Andersen LLP*,
    44 Cal. 4th 937 (2008)...........................................................................29

*Epicor Software Corp. v. Alternative Tech. Sols., Inc.*,
    2013 WL 12130024 (C.D. Cal. Dec. 2, 2013) ...............................10, 11

*Epicor Software Corp. v. Alternative Tech. Sols., Inc.*,
    2013 WL 2382262 (C.D. Cal. May 9, 2013)....................................19, 20

*Epicor Software Corp. v. Alternative Tech. Sols., Inc.*,
    2015 WL 12724073 (C.D. Cal. Apr. 2, 2015)........................................13

*Four Navy Seals v. Associated Press*,
    413 F. Supp. 2d 1136 (S.D. Cal. 2005) .........................................19, 20

Cooley LLP
Attorneys at Law
San Diego

ii

Memorandum In Support Of
Defendants' Motion To Dismiss
3:20-cv-01782-W-BGS

*GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
  2015 WL 12731920 (C.D. Cal. Sept. 21, 2015) ................................................. 6, 7

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
  100 F. Supp. 2d 1086 (C.D. Cal. 1999) .......................................................... 25, 26

*Green Crush LLC v. Paradise Splash I, Inc.*,
  2018 WL 4940824 (C.D. Cal. Mar. 8, 2018) ........................................................ 31

*Hardisty v. Moore*,
  2015 WL 6393884 (S.D. Cal. Oct. 22, 2015) ....................................................... 33

*Humphreys & Assocs., Inc. v. Cressman*,
  2015 WL 12698428 (C.D. Cal. Aug. 31, 2015) ...................................................... 8

*Hurtado Lucero v. IRA Servs., Inc.*,
  2020 WL 553941 (N.D. Cal. Feb. 3, 2020) .......................................................... 33

*Intrinsic Sys., LLC v. Lowry*,
  2017 WL 10402609 (C.D. Cal. Dec. 21, 2017) ..................................................... 19

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,
  880 F. Supp. 2d 1029 (N.D. Cal. 2012) ......................................................... 24, 25

*Jun-En Enter. v. Lin*,
  2013 WL 12126115 (C.D. Cal. June 17, 2013) .................................................... 14

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
  171 Cal. App. 4th 939 (2009) ..................................................................... 15, 16

*Klein v. Chevron U.S.A., Inc.*,
  202 Cal. App. 4th 1342 (2012) ...................................................................... 37

*Kulberg v. Washington Mut. Bank*,
  2011 WL 1431512 (S.D. Cal. Apr. 14, 2011) ...................................................... 31

*Lakeland Tours, LLC v. Bauman*,
  2014 WL 12570970 (S.D. Cal. Feb. 11, 2014) ................................................ 14, 31

*Livingston v. Morgan*,
  2006 WL 8459602 (N.D. Cal. July 31, 2006) ...................................................... 20

*Lovesy v. Armed Forces Ben. Ass'n*,
  2008 WL 696991 (N.D. Cal. Mar. 13, 2008) ................................................... 34, 35

*Mattel, Inc. v. MGA Entm't, Inc.*,
  782 F. Supp. 2d 911 (C.D. Cal. 2011) .......................................................*passim*

*McFall v. Stacy & Witbeck, Inc.*,
  2016 WL 6248882 (N.D. Cal. Oct. 26, 2016) ...................................................... 33

*MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*,
   2020 WL 5064253 (S.D. Cal. Aug. 27, 2020) ...................................4, 12, 15, 16

*Mention v. Gessell*,
   714 F.2d 87 (9th Cir. 1983) ............................................................................ 18

*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989) ............................................................................ 5

*Mueller v. San Diego Entm't Partners, LLC*,
   260 F. Supp. 3d 1283 (S.D. Cal. 2017) ......................................................25, 26

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996) .......................................................................... 36

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) ............................................................................ 2

*Pellerin v. Honeywell Int'l, Inc.*,
   877 F. Supp. 2d 983 (S.D. Cal. 2012) ..................................................30, 31, 32

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ........................................................................ 21

*Power Integrations, Inc. v. De Lara*,
   2020 WL 1467406 (S.D. Cal. Mar. 26, 2020).................................................. 36

*PQ Labs, Inc. v. Yang Qi*,
   No. 12-0450 CW, 2014 WL 334453 (N.D. Cal. Jan. 29, 2014)........................ 23

*Qpid.me, Inc. v. Schrom*,
   2013 WL 4833990 (S.D. Cal. Sept. 9, 2013) ................................................... 7

*Rasidescu v. Midland Credit Mgmt., Inc.*,
   435 F. Supp. 2d 1090 (S.D. Cal. 2006) ........................................................4, 25

*Reeves v. Hanlon*,
   33 Cal. 4th 1140 (2004)............................................................................34, 35, 36

*Regents of the Univ. of California v. Aisen*,
   2016 WL 4096078 (S.D. Cal. Apr. 22, 2016) ...........................................21, 22, 23

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
   907 F. Supp. 1361 (N.D. Cal. 1995).................................................................. 21

*Rosen v. Hollywood Show, LLC*,
   2018 WL 1684314 (C.D. Cal. Apr. 4, 2018).................................................... 20

*Rudd v. Borders, Inc.*,
   2009 WL 4282013 (S.D. Cal. Nov. 25, 2009) .............................................17, 38

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iv

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
3:20-CV-01782-W-BGS**

*Ryan v. Editions Ltd. W., Inc.*,
   786 F.3d 754 (9th Cir. 2015) ....................................................................... 18, 19

*S. California Inst. of Law v. TCS Educ. Sys.*,
   2011 WL 1296602 (C.D. Cal. Apr. 5, 2011)................................................... 7

*San Diego Cty. Credit Union v. Citizens Equity First Credit Union*,
   325 F. Supp. 3d 1088 (S.D. Cal. 2018). ............................................................ 43

*Schertzer v. Bank of Am., N.A.*,
   2020 WL 5759753 (S.D. Cal. Sept. 28, 2020) ..................................................... 37

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ..................................................................... 42, 43

*Sierra Network, Inc. v. Tobacco Imp. USA*,
   2008 WL 11338578 (C.D. Cal. June 2, 2008)................................................ 18, 19

*Sims v. Yarrdownmuzik, Inc.*,
   2018 WL 6131195 (C.D. Cal. Apr. 27, 2018) .................................................... 20

*Space Data Corp. v. X*,
   2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017).......................................... 7

*Steward v. West*,
   2013 WL 12120232 (C.D. Cal. Sept. 6, 2013)............................................ 20, 21

*Stokes v. CitiMortgage, Inc.*,
   2014 WL 4359193 (C.D. Cal. Sept. 3, 2014)................................................. 38, 39

*Sunbelt Rentals, Inc. v. Victor*,
   43 F. Supp. 3d 1026 (N.D. Cal. 2014)............................................................ 22

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
   2 Cal. App. 4th 153 (1991).......................................................................... 26

*Teva Pharm. USA, Inc. v. Health IQ, LLC*,
   2013 WL 12132029 (C.D. Cal. Apr. 29, 2013).................................................. 13

*Thompson v. Impaxx, Inc.*,
   113 Cal. App. 4th 1425 (2003)...................................................................... 8

*Top Agent Network, Inc. v. Zillow, Inc.*,
   2015 WL 7709655 (N.D. Cal. Apr. 13, 2015) .............................................. 37, 38

*Transcription Commc'ns Corp. v. John Muir Health*,
   2009 WL 666943 (N.D. Cal. Mar. 13, 2009)................................................. 35

*Twelve Sixty, LLC v. Discovery, Inc.*,
   2018 WL 6038308 (C.D. Cal. June 12, 2018)................................................. 21

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

v

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
3:20-CV-01782-W-BGS

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ....................................................... 24, 25

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2015) .............................................................................. 23

*Vegas Diamond Properties, LLC v. Wiggins*,
   2012 WL 1340437 (S.D. Cal. Apr. 18, 2012) ..................................................... 27

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .............................................................................. 4

*Webpass Inc. v. Banth*,
   2014 WL 7206695 (N.D. Cal. Dec. 18, 2014) ..................................................... 9

*Wolf Designs, Inc. v. DHR Co.*,
   322 F. Supp. 2d 1065 (C.D. Cal. 2004) ......................................................... 40, 42

*In re Woodbridge Investments Litig.*,
   2020 WL 4529739 (C.D. Cal. Aug. 5, 2020) ..................................................... 33

*World Surveillance Grp. Inc. v. La Jolla Cove Inv'rs, Inc.*,
   2014 WL 1411249 (N.D. Cal. Apr. 11, 2014) ................................................... 37

**Statutes**

17 U.S.C.
   § 301 ................................................................................................................... 18
   § 411 ................................................................................................................... 19

18 U.S.C.
   § 1839 ............................................................................................................. 5, 10

CAL. BUS. & PROF. CODE
   § 16600 ..................................................................................................... 1, 28, 29
   § 17200 ......................................................................................................... 17, 38

CAL. CIV. CODE
   § 3426.1 .......................................................................................................... 5, 10

CAL. PENAL CODE
   § 502 ............................................................................................................. 22, 23
   § 502(c) ................................................................................................... 21, 22, 23
   § 502(h) ............................................................................................................... 22

**Court Rules**

California Rules of Professional Conduct, Rule 5.6(a)(1) ..................................... 29

Federal Rules of Civil Procedure ............................................................. 4, 5, 20, 39

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

vi

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
3:20-CV-01782-W-BGS

## I.    INTRODUCTION

Clients are not the "property" of the law firms they hire, and at-will associate attorneys are not the "property" of the law firms that hire them. And contrary to the Complaint's conclusory allegations, the general practice of law is not a "trade secret."

Further, California law and public policy fiercely protect employee mobility. By statute, a California employer cannot contractually restrain a former employee from engaging in his or her lawful profession, trade, or business, except under limited circumstances. *See, e.g.,* CAL. BUS. & PROF. CODE § 16600. The California Rules of Professional Conduct likewise protect attorney mobility and prohibit agreements that improperly restrict a lawyer's ability to practice law. Notwithstanding these steadfast and well-settled legal principles, Plaintiff Whiteslate, LLP, DBA Slate Law Group ("Slate") filed this suit against its former at-will associate, Defendant Derek Dahlin, after he accepted a better position as an in-house attorney for one of Slate's (now former) clients, Defendant Mango Technologies, Inc., DBA ClickUp ("ClickUp"). Instead of congratulating Dahlin and looking forward to a continued relationship with him and the client (as most law firms would), Slate partner Kelly DuFord immediately told Dahlin that he "was not permitted" to take the job at ClickUp (ECF No. 1, Compl., ¶ 72), and that she would sue him if he did.

Although some associates might have been intimidated by DuFord's threats, Dahlin knew they were neither supported by the agreements he had signed with Slate (including an at-will employment offer letter and a non-disclosure agreement), nor the law. Dahlin thus accepted the role at ClickUp, and DuFord filed the forty-page Complaint that is the subject of this motion to dismiss.

Despite its length, twenty causes of action, and barrage of conclusory assertions, Slate's Complaint fails to state a single valid claim. As discussed in detail below, Defendants' motion should be granted for myriad independent reasons, and the Complaint should be dismissed with prejudice. Defendants expressly reserve all rights and available remedies against Slate for filing such frivolous allegations.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

1

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
3:20-CV-01782-W-BGS

## II.   RELEVANT BACKGROUND

ClickUp is a growing tech company developing and promoting a disruptive and game-changing productivity app aimed at increasing team management and business efficiency. Defendant Brian Evans is ClickUp's founder and chief executive officer and Defendant Wes Brummette is ClickUp's chief operating officer.[1] ClickUp is not a law firm, and it is not engaged in the business of providing legal services.

Slate is a small law firm based in San Diego. In March 2020, Slate offered Dahlin a job as an Associate Transactional Attorney. (Compl., ¶ 21.) Slate offered Dahlin the position while he was still employed in an in-house legal role for another company. (*See id*., ¶ 23.) Dahlin initially declined Slate's offer because he wanted to stay with that employer, but agreed to do some work for Slate as a contractor. (*Id*., ¶¶ 23–24.) Slate required Dahlin to sign a Non-Disclosure and Confidentiality Agreement ("NDA") to do contract work for Slate. (*Id*., ¶ 28.)

On April 14, 2020, Slate again extended a full-time job offer to Dahlin, which this time he accepted. (*Id*., ¶¶ 47, 49.) Slate's written offer letter signed by Dahlin expressly states that his employment was "at-will." (*See* Declaration of Summer J. Wynn ("Wynn Decl."), Ex. C.)[2] While working for Slate, Dahlin was assigned to work on "varying transactional matters" for several Slate clients, including ClickUp, which had been a client since October 2019. (Compl., ¶¶ 53–54, 56.)

After building a rapport with Dahlin and impressed by his abilities, Brummette sent Dahlin a message, on or about May 14, 2020, asking Dahlin if he would be interested in joining ClickUp in house. (*Id*., ¶ 66.) Over the next few days, Dahlin

---

[1] Defendant Robert Smith has no role at ClickUp, and no connection to California, Slate, or the allegations in this suit. (*See* Wynn Decl. Ex. A [Declaration of Robert D. Smith ("Smith Decl.")].) Smith is not subject to personal jurisdiction in California (*see* Section IV(M), *infra*), and there is no basis for Smith to be named in this action.

[2] The Complaint repeatedly refers to, but does not attach, Dahlin's "offer letter." (*E.g.*, Compl., ¶¶ 48–50, 200, 206.) Dahlin thus requests that the Court consider the document, which is attached to the Wynn Declaration as Exhibit C. Of course, "[a] district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (citation omitted).

interviewed and spoke with others at ClickUp about becoming an employee. Then, only one week after receiving the initial inquiry from Brummette, Dahlin told Slate's managing partner DuFord about ClickUp's proposal on or about May 21, 2020. (*Id.*, ¶ 71.) DuFord told Dahlin that he "was not permitted" to take the job at ClickUp (*id.*, ¶ 72), and that she would sue him if he did.

On or about June 16, 2020, Dahlin formally resigned from Slate in writing. (*Id.*, ¶¶ 86–89.) On or about June 21, 2020, Dahlin spoke with another Slate attorney and told him about the job offer he received from ClickUp and his plan to join the ClickUp team. (*Id.*, ¶¶ 93–96.) Dahlin joined ClickUp as an employee in July 2020.

On September 10, 2020, Slate filed the Complaint, which asserts:

- Trade secret misappropriation and copyright infringement claims ***against all named Defendants*** (the First through Fifth Causes of Action);

- Breach of contract, fraud and other torts ***against Dahlin only*** (the Sixth through Twelfth and Nineteenth and Twentieth Causes of Action); and

- Interference and aiding and abetting claims ***against ClickUp (the company) and Evans, Brummette and Smith (individually)*** (the Thirteenth through Eighteenth Causes of Action).

For efficiency, Defendants bring a single joint motion to dismiss, but each defendant joins in only those argument sections against the claims for which they are named. In addition, Smith moves for an order dismissing him as an individual because he is not subject to personal jurisdiction in California. (*See* Section IV(M), *infra*.)

After being sued by its outside counsel, ClickUp terminated its lawyer-client relationship with Slate on September 13, 2020. Although the Complaint fails to acknowledge it, ClickUp continued to be a client of Slate after Dahlin's departure, and ClickUp continued to pay Slate monthly fees. In other words, contrary to Slate's assertion that it was "damaged in that it lost both an employee and a client by Dahlin resigning and committing to employment with Slate's client, ClickUp" (*id.*, ¶ 175), the reality is that the only party that has caused damage to Slate is Slate. It was not until Slate sued ClickUp that ClickUp had no choice but to end the client relationship.

### III.   LEGAL STANDARD

"Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2020 WL 5064253, at *14 (S.D. Cal. Aug. 27, 2020). "A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to 'state a claim to relief that is plausible on its face.'" *Id*. (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

In addition, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Thus, fraud must be pled "with a high degree of meticulousness." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000). The complaint must "state precisely the time, place, and nature of the misleading statements, misrepresentations, or specific acts of fraud," and "set forth an explanation as to why the statement or omission complained of was false or misleading." *Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1095 (S.D. Cal. 2006) (citations omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") (citation omitted). Vague or conclusory allegations are insufficient to satisfy the "particularity" required by Rule 9(b). *See, e.g., Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

### IV.   ARGUMENT

#### A.   Slate Fails To State A Claim For Trade Secret Misappropriation.

To state a claim for trade secret misappropriation under the California Uniform Trade Secrets Act ("CUTSA"), a plaintiff must demonstrate: "'(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff.'"

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011) (citation omitted). The elements of misappropriation under the Federal Defend Trade Secrets Act ("DTSA") are substantially similar. *See, e.g.*, *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018).

Slate's allegations do not establish even one, let alone all three essential elements. As such, the First and Second Causes of Action fail out of the gate.

### 1.    Slate Has Not Pled A Protectable Trade Secret.

Slate does not allege the fundamental predicate of a misappropriation claim – i.e., the existence of a protectable trade secret. CUTSA defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d).[3] In the Complaint, Slate merely asserts that the following are trade secrets: "[C]onfidential and proprietary information regarding Slate's contracts, document templates, and other work-product, as well as Slate's client list and database." (Compl., ¶ 117.) Such vague, unsupported and conclusory allegations are insufficient to adequately plead a protected trade secret under federal or state law.

### a.    Slate Does Not Identify The Purported Trade Secrets With The Requisite Specificity.

"It is crucial to any CUTSA Cause of action—and any defense—that the information claimed to have been misappropriated be clearly identified." *Agency Solutions.Com*, 819 F. Supp. 2d at 1015; *see also GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, 2015 WL 12731920, at *11 (C.D. Cal. Sept. 21, 2015) ("In an action under CUTSA, it is imperative that the alleged trade secrets be *specifically identified*.") (citation omitted) (emphasis added). CUTSA and DTSA

---

[3] DTSA's definition of trade secret is materially similar. S*ee* 18 U.S.C. § 1839(3).

"share the same pleading requirements for the identification of trade secrets." *Alta Devices*, 343 F. Supp. 3d at 880–81.

As such, a plaintiff "must clearly identify what the 'thing' is that is alleged to be a trade secret" and "must be able to clearly articulate why that 'thing' belongs in the legal category of trade secret." *Agency Solutions.Com*, 819 F. Supp. 2d at 1015. Further, "[t]o prevent employers from using trade secret law as a weapon against employee mobility, California requires that 'a party seeking to protect trade secrets [ ] describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit defendant to ascertain at least the boundaries within which the secret lies.'" *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 967 (C.D. Cal. 2011) (citations omitted); *see also Alta Devices*, 343 F. Supp. 3d at 881.

Slate's attempt to allege a trade secret is hopelessly vague and falls far short. (*See, e.g.,* Compl., ¶¶ 107, 117 [describing trade secrets as ". . . contracts, document templates, and other work-product, as well as Slate's client list and database"].) The allegations are in the broadest terms possible and include essentially anything related to its business — i.e., the practice of law. This is woefully insufficient. *See, e.g., Mattel,* 782 F. Supp. 2d at 967 ("[A] vague claim that a former employee misappropriated 'business models and implementations' is insufficient to describe a trade secret with particularity."). Slate's boilerplate and generalized allegations make it impossible for Defendants, or this Court, to distinguish any purported trade secrets "from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade," and to ascertain "the boundaries within which the secret lies." *See Alta Devices*, 343 F. Supp. 3d at 881.

Indeed, Slate's sweeping and conclusory categories of claimed trade secrets are precisely the type of "vague hand waiving" that courts do not condone. *See Agency Solutions.Com*, 819 F. Supp. 2d at 1015. Courts routinely dismiss

misappropriation claims where the plaintiff similarly fails to identify the purported trade secret with the requisite specificity. *See, e.g.*, *Qpid.me, Inc. v. Schrom*, 2013 WL 4833990, at *5 (S.D. Cal. Sept. 9, 2013) (granting motion to dismiss where "contemplated trade secret is not evident from the phrase 'business plans and strategies'"); *GeoData Sys. Mgmt.*, 2015 WL 12731920, at *12 (dismissing misappropriation claim where alleged trade secret was "all information regarding [plaintiff's] product, its applications, its customers, its improvements, its problems and issues"); *S. Cal. Inst. of Law v. TCS Educ. Sys.*, 2011 WL 1296602, at *7 (C.D. Cal. Apr. 5, 2011) (granting motion to dismiss where plaintiff identified a number of documents but failed to identify which documents contained trade secrets and failed to described them "with sufficient particularity to separate [them] from matters of general knowledge"); *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (dismissing misappropriation claim where plaintiff "merely provide[d] a high-level overview of [plaintiff's] purported trade secrets").

At best, Slate's self-proclaimed trade secrets are nothing more than a laundry list of documents and routine methods of practicing law — none of which qualify for protection as trade secrets. *See, e.g., Agency Solutions.Com*, 819 F. Supp. 2d at 1017 ("Proprietary ways of doing the same thing that others in the same field do are not trade secrets"; "'[G]eneral knowledge in the trade or [...] special knowledge of those persons who are skilled in the trade' are not trade secrets."; "Ideas or concepts are not, in and of themselves, trade secrets.") (citations omitted). Moreover, to the extent Slate refers to its contracts, document templates, and other work product, Slate shares this information with clients — just as it did with ClickUp — and, in many instances, also in public disclosures or filings, thereby negating any alleged "secrecy." *See, e.g.*, *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 992 (N.D. Cal. 2017) ("'[I]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished.'") (citation omitted).

Further, Slate cannot merely rely on the NDA it drafted to support its claims.[4] Labeling information as confidential, proprietary, or trade secret does not automatically convert business information into a statutorily protected trade secret. *See, e.g., Humphreys & Assocs., Inc. v. Cressman*, 2015 WL 12698428, at *3 (C.D. Cal. Aug. 31, 2015) ("An employment agreement defining information as trade secret or confidential is not decisive in determining whether it qualifies as such."); *Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th 1425, 1430 (2003) ("[L]abeling information as a trade secret or as confidential information does not conclusively establish that the information fits this description.").

In short, Slate does not identify its purported trade secrets with the requisite particularity, and thus the misappropriation claims must be dismissed.

### b.  Slate Does Not Identify Protectable Subject Matter.

Slate also fails to plead facts showing that the subject matter of its alleged trade secrets is protectable. To state a misappropriation claim, the plaintiff must allege "***facts*** establishing that the information and methods alleged to constitute its trade secrets derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure." *Webpass Inc. v. Banth*, 2014 WL 7206695, at *3 (N.D. Cal. Dec. 18, 2014) (emphasis added). It is not enough for a complaint to "conclusorily allege [] that the information had and continues to have significant independent economic value by virtue of not being generally known to the public or to Plaintiff's competitors." *Id.* Rather, the plaintiff must plead ***how*** or ***why*** the trade secrets "derive such value." *Id.* Slate's Complaint fails on this point, too.

Slate merely asserts that it has "expended a significant amount of time, energy

---

[4] Dahlin also signed another version of the NDA, which Slate claims was provided to him in error during employee onboarding. (*See* Compl., ¶ 51, n.1.) Slate's choice to rely on the earlier version attached to the Complaint as Exhibit A is because Exhibit A does not contain an arbitration clause. Dahlin takes no issue with Slate's decision to waive and invalidate its own arbitration agreement but notes that Slate's legal opinion that all arbitration agreements are now "statutorily invalid" is wrong.

and resources to create confidential, proprietary information and trade secrets," and that "[t]hey are of independent economic value because they are based on information not generally known within the trade or by other persons or entities who could obtain economic value from their disclosure or use. . ." (Compl., ¶ 118.) This boilerplate recitation of the legal standard is devoid of any explanation as to *how* "information regarding [its] contracts, document templates, and other work-product, as well as [its] client list and database," derives independent economic value from not being generally known. (*Id.*, ¶ 117) Again, Slate's conclusory allegations merely parrot CUTSA's definition. This is insufficient, and another reason to dismiss Slate's misappropriation claims.

### 2. Slate Has Not Pled Misappropriation.

Slate's failure to plead a "misappropriation" is an additional independent reason to dismiss the trade secret claims. CUTSA defines "misappropriation," in relevant part, as "(1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of another without express or implied consent by a person who . . . [u]sed improper means to acquire knowledge of the trade secret." CAL. CIV. CODE § 3426.1(b).[5] Of course, mere possession of a trade secret is not enough. Rather, a plaintiff must allege facts to demonstrate that each defendant "acquired, disclosed, or used the plaintiff's trade secret through improper means." *Agency Solutions.Com*, 819 F. Supp. 2d at 1015 (citations omitted). A plaintiff may not rely on "conclusory, formulaic allegation[s]" to sufficiently plead the element of misappropriation. *See, e.g., Epicor Software Corp. v. Alternative Tech. Sols., Inc.*, 2013 WL 12130024, at *3 (C.D. Cal. Dec. 2, 2013).

In this regard, Slate's Complaint is nothing but conclusory: "Defendants unlawfully and improperly retained, used, disclosed or otherwise misappropriated

---

[5] DTSA's definition similarly requires that a wrongful acquisition be "by a person who knows or has reason to know that the trade secret was acquired by improper means." 18 U.S.C. § 1839(5).

Slate's confidential, proprietary information and trade secrets, including but not limited to unlawfully accessing and retaining such information from Slate's office and electronic systems for Dahlin's and ClickUp's beneficial use, unlawfully using and disclosing such information to unauthorized individuals or entities, and unlawfully using such information to solicit, induce, recruit and/or encourage Slate's existing employee, Dahlin, to leave his employment relationship with Slate and to come work with Defendants ClickUp, Brummette, Smith, and Evans." (Compl., ¶ 111.) Slate also vaguely claims that "Dahlin misappropriated the [] trade secrets," and that "Defendants Evans, Smith, Brummette, and ClickUp acquired Slate's trade secrets and confidential and proprietary information that they knew or had reason to know were acquired by improper means." (*Id.*, ¶¶ 121–122.)

The Complaint does not contain a single factual allegation as to how or when the alleged misappropriation occurred or what role each Defendant allegedly played. For instance, Slate does not allege any facts to show that ClickUp, Brummette, Smith, or Evans took any action to acquire or use confidential information from Slate. Slate merely lumps all Defendants together and generally alleges that they all "unlawfully and improperly retained, used, disclosed or otherwise misappropriated Slate's confidential, proprietary information and trade secrets." (*Id.*, ¶ 111.) Courts routinely reject such conclusory accusations. *See, e.g.*, *Bioriginal Food & Sci. Corp. v. Biotab Nutraceuticals Inc.*, 2013 WL 6572573, at *5 (C.D. Cal. Dec. 13, 2013) (dismissing misappropriation claim where plaintiff failed to provide enough "factual content" to permit the court to "to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged"); *Epicor Software*, 2013 WL 12130024, at *3 (allegation that "Epicor has, without authorization, acquired Alternative's Service Identification Information and customer information" held insufficient to adequately allege misappropriation).

In sum, Slate does not identify any improper conduct by any Defendant, let alone of all of them. The misappropriation claims fail for this reason, as well.

### 3.  Slate's Attempt To Allege Damages Fails.

The trade secret claims also fail because Slate fails to sufficiently plead damages, the third essential element of a misappropriation claim. *See Agency Solutions.Com*, 819 F. Supp. 2d at 1015. Slate declares that it "has sustained substantial damages, and Defendants have been unjustly enriched, in an amount to be determined at trial." (*E.g.*, Compl., ¶ 113.) But nowhere in its Complaint does Slate allege any facts to support this conclusory assertion – nor could it.

***ClickUp and Slate are not competitors***. ClickUp (Slate's now-former client) is a growing tech company — not a law firm, and ClickUp's business has nothing to do with providing legal services. Notwithstanding Slate's absurd and unsupported claim that Defendants have used "and will continue to use these trade secrets *to compete unfairly* with Slate" (*id.*, ¶ 123 (emphasis added)), Slate has not alleged and could not allege any actual facts to support a viable claim for damages based on trade secret misappropriation. *See  E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek,* 2018 WL 2463869, at *8 (E.D. Cal. June 1, 2018) (dismissing trade secret claim where plaintiff failed to "plausibly allege[] that it has suffered any damages as a result of defendants' alleged conduct").

In reality, ClickUp continued to be a client of Slate after Dahlin's departure, and ClickUp continued to pay Slate monthly fees. Contrary to Slate's assertion that it was "damaged in that it lost both an employee and a client by Dahlin resigning and committing to employment with Slate's client, ClickUp" (Compl., ¶ 175), it was not until ***after*** Slate sued ClickUp that ClickUp terminated its client relationship. Suffice it to say, any damage suffered by Slate is the product of its decision to file this frivolous lawsuit, not any alleged trade secret misappropriation.

### B.  CUTSA Preemption Bars The Twelfth Through Twentieth Causes Of Action As A Matter Of Law.

CUTSA "'occupies the field' of common law claims based on the misappropriation of a trade secret." *Mattel*, 782 F. Supp. 2d at 985 (citation omitted).

"Due to the broad scope of CUTSA, it preempts any common law claim that derives from the same nucleus of facts as trade secret misappropriation." *MedImpact Healthcare Sys.*, 2020 WL 5064253, at *16. As a matter of law, CUTSA supersedes "all claims premised on the wrongful taking and use of confidential business and proprietary information, even if that information does not meet the statutory definition of a trade secret." *Teva Pharm. USA, Inc. v. Health IQ, LLC*, 2013 WL 12132029, at *5 (C.D. Cal. Apr. 29, 2013). "Thus, the critical inquiry in evaluating the applicability of CUTSA supersession is whether the gravamen of [the] claims rests on the improper acquisition and/or use of information that is treated as confidential." *Epicor Software Corp. v. Alternative Tech. Sols., Inc.*, 2015 WL 12724073, at *2 (C.D. Cal. Apr. 2, 2015). Further, "[a] claim cannot simply depend on a 'different theory of liability' to survive" preemption. *Mattel*, 782 F. Supp. 2d at 985 (citation omitted).

As discussed below, CUTSA preempts the Twelfth through Twentieth Causes of Action because each claim is based on the same nucleus of alleged facts as the trade secret claims. For this reason alone, these causes of action should be dismissed without leave to amend.

### 1.     The Duty Of Loyalty Claims Are Preempted.

The Twelfth Cause of Action is premised entirely on the allegation that, "***Dahlin breached his duty of loyalty by misappropriating Slate's trade secrets and confidential and business and proprietary information*** . . ." (Compl., ¶ 212 (emphasis added).) Where, as here, "the allegation is that [the defendant] breached his duty of loyalty *by* disclosing trade secrets[,] [t]he claim for breach of fiduciary duty is based on the same operative facts and is therefore preempted by CUTSA." *Anokiwave, Inc. v. Rebeiz*, 2018 WL 4407591, at *4 (S.D. Cal. Sept. 17, 2018). On its face, Slate's claim for breach of duty of loyalty against Dahlin is based entirely on the same allegations as its misappropriation claims. (*Compare* Compl., ¶ 212, *with* Compl., ¶¶ 111, 121.)

This claim not only derives from the same nucleus of operative alleged facts, it literally repeats the misappropriation allegations. Accordingly, the Twelfth Cause of Action is preempted by CUTSA and should be dismissed with prejudice. *See Lakeland Tours, LLC v. Bauman*, 2014 WL 12570970, at *8 (S.D. Cal. Feb. 11, 2014) (dismissing with prejudice duty of loyalty claim where it "involve[d] the same factual allegations" as the misappropriation claim and sought "damages for the alleged misappropriation of trade secrets"); *Jun-En Enter. v. Lin*, 2013 WL 12126115, at *3 (C.D. Cal. June 17, 2013) (finding duty of loyalty claim was "based on the same nucleus of facts as Plaintiffs' trade secret misappropriation claim" and therefore "superseded by CUTSA" when "Plaintiffs continue to allege that Defendants used proprietary information that Plaintiffs have identified as trade secrets to divert customers away from Plaintiffs").

Likewise, the Thirteenth Cause of Action against ClickUp, Evans, Smith and Brummette, for aiding and abetting breach of the duty of loyalty, fails for the same reason. The Complaint thinly asserts that "Evans, Smith, and Brummette personally participated in the wrongful conduct of aiding and abetting with Dahlin for Dahlin to breach his duty of loyalty to Slate." (Compl., ¶ 218.) This claim is thus also premised entirely on Dahlin's alleged trade secret misappropriation and should be dismissed with prejudice. *See Mattel*, 782 F. Supp. 2d at 988 ("UTSA supersedes both the breach of fiduciary duty and aiding and abetting breach of fiduciary duty counter-claims in their entirety."); *Anokiwave*, 2018 WL 4407591, at *5 (holding that aiding and abetting claim was "likewise preempted by CUTSA" because it "rises and falls" with the fiduciary claim, which was also held preempted).

### 2.    The Interference Claims Are Preempted

Slate also asserts a long list of "interference" claims against ClickUp, Evans, Smith and Brummette (the Fourteenth through Eighteenth Causes of Action). Although typed under different names, each interference claim is based on the assertion that these Defendants "conspired and agreed among themselves to poach

Dahlin from [Slate], to obtain Slate's trade secrets and confidential business and proprietary information, and to take Slate's contract templates and work-product for ClickUp's use." (*E.g.,* Compl., ¶ 98.) Plainly, these claims also rely on the same nucleus of alleged facts as the misappropriation claims and are therefore preempted.

The case *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939 (2009), is instructive. There, a software provider brought claims against its former customer and employee for trade secret misappropriation, breach of confidence, tortious interference with contract, and unfair competition. *Id*. at 945. In support of its interference claim, the provider alleged that the customer "'engaged in intentional acts designed to induce a breach or disruption of plaintiff's contractual relationship' with [the employee] by 'helping' and 'encouraging' him 'to misappropriate [the provider's] [] trade secrets and then by luring [the employee] to become an employee of [the customer].'" *Id*. at 960–61. The provider further alleged that its "contractual relationship with [the employee] was disrupted and breached because [the employee] misappropriated [the provider's] trade secrets and accepted employment with [the customer]." *Id*. at 961.

The court of appeal affirmed the dismissal of the interference claim, finding that "the gravamen of the wrongful conduct asserted here is the misappropriation of trade secrets." *Id*. "Legally, that conduct falls within the statutory definition of 'improper means' of acquiring a trade secret, which 'includes . . . breach or inducement of a breach of a duty to maintain secrecy . . .'" *Id*. (citing CAL. CIV. CODE § 3426.1(a)). "Factually, the conduct derives from 'the same nucleus of facts' as the trade secrets claim, and it is therefore preempted." *Id*.

Similarly, in *MedImpact Healthcare Sys.*, the court dismissed the plaintiff's claims for inducing breach of contract, intentional interference with contractual relationship, and intentional and negligent interference with prospective economic relations, finding that all were preempted by CUTSA. *See* 2020 WL 5064253, at *17 ("[A] careful review of the allegations to support both claims reveals that they rely

on the same nucleus of facts as the trade secret misappropriation.")

Here, in strikingly similar allegations to those in *K.C. Multimedia*, Slate alleges that Defendants "conspired and agreed among themselves to poach Dahlin from Slate Law Group, to obtain Slate's trade secrets and confidential business and proprietary information, and to take Slate's contract templates and work-product for ClickUp's use." (*E.g.,* Compl., ¶ 98.) Slate further alleges that "Defendants' actions were done with a malicious intent to cause harm to Slate's business by poaching one of Slate's attorneys and wrongfully taking Slate's trade secrets and work-product for its own use." (*Id.*, ¶ 104.) At their core, the interference claims are based on the allegation that Defendants induced a breach or disruption of Slate's relationship with Dahlin by helping and encouraging him to misappropriate Slate's trade secrets and then by luring Dahlin to become an employee of ClickUp, which is exactly what the court in *K.C. Multimedia* found preempted. *See* 171 Cal. App. 4th at 960–61.

Because the gravamen of Slate's allegations is that Defendants disrupted its relationship with Dahlin and improperly acquired or used information that Slate claims to be trade secrets and proprietary and confidential, the interference claims (the Fourteenth through Eighteenth Causes of Action) are superseded by CUTSA and should be dismissed, without leave to amend.

### 3. The Unjust Enrichment And UCL Claims Are Preempted.

The Nineteenth and Twentieth Causes of Action for unjust enrichment and unfair business practice similarly fail because they also rely on the same nucleus of alleged facts as the trade secret claims and are therefore preempted. For instance, in support of its unjust enrichment claim, Slate alleges that "Dahlin's misappropriation of Slate's trade secrets and confidential business and proprietary information caused Dahlin to receive a benefit that he otherwise would not have achieved." (Compl., ¶ 261.) Slate also asserts that "Dahlin has been unjustly enriched, and it would be inequitable for Dahlin to be allowed to retain the benefits of Slate's trade secrets and confidential business and proprietary information . . ." (*Id.*, ¶ 263.)

Similarly, in support of its unfair business practice claim, Slate alleges that "Dahlin breached his duty of loyalty owed to Slate, and he intentionally interfered with Slate's business relationship with its clients," and that these acts "constituted unlawful and unfair business practices." (Compl., ¶ 265.) As shown above, Slate's breach of duty of loyalty claim is entirely based on the allegation that Dahlin "misappropriate[ed] Slate's trade secrets and confidential business and proprietary information for the purpose of accessing and using such information to compete with Slate." (*Id*., ¶ 212). Thus, like its duty of loyalty claim, Slate's unfair competition claim fails because it relies on the same nucleus of alleged facts as the trade secret claims. *See Rudd v. Borders, Inc.*, 2009 WL 4282013, at *2 (S.D. Cal. Nov. 25, 2009) ("[I]f a plaintiff cannot state a claim under the predicate law, [], her Section 17200 claim also fails.").

In short, both the Nineteenth and Twentieth Causes of Action are based on the alleged improper acquisition and/or use of alleged trade secrets and confidential information. As such, they are preempted by CUTSA, and should be dismissed. *See Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (holding unjust enrichment and unfair competition claims preempted by CUTSA because they were "based on the same nucleus of facts as the misappropriation of trade secrets claim for relief"); *AirDefense, Inc. v. AirTight Networks, Inc.*, 2006 WL 2092053, at *5 (N.D. Cal. July 26, 2006) (finding conversion and unjust enrichment claims preempted because they "ar[ose] from the same facts as the claim for misappropriation of trade secrets").

**C.      Slate Fails To State A Claim For Copyright Infringement.**

The Third through Fifth Causes of Action purport to assert claims for common law copyright infringement, common law vicarious copyright infringement, and common law contributory copyright infringement. Each claim is preempted by the Copyright Act; and, in any event, Slate fails to plead a valid copyright or any infringement by Defendants.

**1.     The Common Law Copyright Claims Are Preempted.**

Each of the three common law copyright claims are barred as a matter of law. The federal Copyright Act preempts all claims based on any "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . and come within the subject matter of copyright." 17 U.S.C. § 301; *see also Mention v. Gessell*, 714 F.2d 87, 90 (9th Cir. 1983) ("The Copyright Act of 1976 preempts common law copyright claims, unless the claims arose from 'undertakings commenced before January 1, 1978.'") All such claims are preempted where: "(1) the work at issue falls within the scope of copyright subject matter; and (2) the law at issue grants rights equivalent to any of the exclusive rights within the scope of copyright." *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 760 (9th Cir. 2015).

Here, it is indisputable that Slate's common law copyright claims fall squarely within the realm of the Copyright Act. *See Sierra Network, Inc. v. Tobacco Imp. USA*, 2008 WL 11338578, at *6 (C.D. Cal. June 2, 2008) ("California's cause of action for copyright infringement is preempted by federal copyright law."); *see also Benke v. Departure Agency, Inc.*, 2011 WL 13129964, at *2 (C.D. Cal. Aug. 11, 2011) ("The Copyright Act already 'recognizes the concepts of contributory infringement and vicarious copyright infringement. . . [a] civil conspiracy claim does not add substantively to the underlying federal copyright claim and should therefore be preempted.'"). All three of Slate's copyright claims are premised on Defendants' alleged "reproduc[tion], distribut[ion], and/or publishing" of Slate's alleged "copyrighted contracts and other work-product[.]" (*See* Compl., ¶¶ 127, 140, 151.) These are the very rights protected by the Copyright Act. *Ryan*, 786 F.3d at 760 ("The [exclusive] rights protected under the Copyright Act include the rights of reproduction, preparation of derivative works, distribution, and display.").

As such, the common law copyright claims must be dismissed with prejudice. *See Sierra Network, Inc.*, 2008 WL 11338578, at *6 (dismissing with prejudice plaintiff's common law copyright infringement claim); *Intrinsic Sys., LLC v. Lowry*,

2017 WL 10402609, at *3 (C.D. Cal. Dec. 21, 2017) (dismissing defendants' counterclaim for common law copyright infringement).

### 2. Slate Also Fails To Plead Copyright Infringement.

Even if the copyright claims were not preempted, Slate cannot state a claim for copyright infringement. To show copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1147 (S.D. Cal. 2005). Slate offers no facts to support either element.

To start, Slate does not and could not claim that the alleged copyrights are registered or preregistered, which is a prerequisite to any infringement claim. *See* 17 U.S.C. § 411 ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."); *Epicor Software Corp. v. Alternative Tech. Sols., Inc.*, 2013 WL 2382262, at *3 (C.D. Cal. May 9, 2013) ("To state a copyright claim, the plaintiff must allege that the copyrights at issue are registered or that the plaintiff has applied to register the copyrights at issue.") Where, as here, a plaintiff fails to allege registration, "the court lacks jurisdiction to consider [the] copyright claim." *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1128 (C.D. Cal. 2009). This Court is therefore without jurisdiction to entertain the Third through Fifth Causes of Action. *See Epicor Software*, 2013 WL 2382262, at *4 (dismissing infringement claim where "[c]omplaint d[id] not contain the required allegations of registered copyrights").

Additionally, Slate's infringement claims fail because it does not identify the specific copyrighted materials at issue, or how each Defendant allegedly infringed. "A complaint for copyright infringement fails to satisfy the requirements of Rule 8(a) if it does not allege the specific copyrighted work that has been infringed or how and when the asserted infringement occurred." *Livingston v. Morgan*, 2006 WL 8459602, at *3 (N.D. Cal. July 31, 2006). A complaint must "identify exactly which works

Defendants infringed" to "put Defendants [and] the Court on sufficient notice of the copyright claim." *Four Navy Seals*, 413 F. Supp. 2d at 1148. To this end, a plaintiff "must provide allegations as to when and where, generally, the alleged infringement occurred" (*Rosen v. Hollywood Show, LLC*, 2018 WL 1684314, at *3 (C.D. Cal. Apr. 4, 2018)), and plead sufficient facts to show how each Defendant allegedly infringed the copyrights (*Sims v. Yarrdownmuzik, Inc.*, 2018 WL 6131195, at *2 (C.D. Cal. Apr. 27, 2018)).

Slate's boilerplate legal conclusions fail to allege any of the facts required to satisfy Rule 8. (*See, e.g.,* Compl., ¶ 127 ["Defendants have infringed Slate's copyrights in its works, including without limitation, be [*sic*] reproducing, distributing, and/or publishing the copyrighted contracts and other work-product drafted and created by [Slate]"].) Slate does not even attempt to plead how each Defendant allegedly infringed and, instead, impermissibly lumps them all together. *See Steward v. West*, 2013 WL 12120232, at *3 (C.D. Cal. Sept. 6, 2013) ("Courts in the Ninth Circuit have routinely held that 'undifferentiated pleading against multiple defendants is improper.'") (citations omitted); *Sims*, 2018 WL 6131195, at *2.

In short, Slate's attempt to plead a copyright claim is miserably inadequate. *See, e.g., Steward*, 2013 WL 12120232, at *3–4 (granting motion to dismiss copyright infringement and contributory infringement claims).

### 3.   The Secondary Liability Theories Also Fail.

The Fourth and Fifth Causes of Action for contributory and vicarious infringement are derivative to the direct infringement claim and fail for the same reasons. "Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1371 (N.D. Cal. 1995) ("[T]here can be no contributory infringement by a defendant without direct infringement by another."); *Twelve Sixty,*

*LLC v. Discovery, Inc.*, 2018 WL 6038308, at *3 (C.D. Cal. June 12, 2018). The Fourth and Fifth Causes of Action also require dismissal.

### D.    Slate Fails To State A Claim Under The California Computer Data Access and Fraud Act.

Slate's allegations against Dahlin under the Sixth Cause of Action for violation of the California Computer Data Access and Fraud Act ("CCDAFA")[6] also flop.

The CCDAFA "is a complicated law," and "has been described as an 'anti-hacking statute.'" *Regents of the Univ. of Cal. v. Aisen*, 2016 WL 4096078, at *6 (S.D. Cal. Apr. 22, 2016) (citation omitted). "Because of the complexity, it is necessary that the [] complaint use some precision in the allegations." *Id*. For example, in *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1033 (N.D. Cal. 2014), the court dismissed an employee's section 502 claim against his former employer where the employee included only conclusory allegations in support of his claim, noting that "[t]hese fact-barren and vague allegations are precisely the type of 'threadbare recitals' proscribed by *Twombly* and *Iqbal*."

Slate provides no factual allegations to support the CCDAFA claim, let alone precise ones. Like those held insufficient in *Sunbelt Rentals*, Slate's allegations are conclusory and simply mirror the statutory language. (*See, e.g.*, Compl., ¶ 163 ["Dahlin has violated California Penal Code § 502(c)(1) by knowingly accessing and without permission altering, damaging, deleting, destroying or otherwise using data, documents, information and files from Slate's computer(s), computer system(s) or computer network(s) in order to devise or execute a scheme or artifice to defraud, deceive, or extort, and/or to wrongfully control or obtain money, property or data,

---

[6] California Penal Code section 502(c) provides that a person is guilty of a public offense if he, *inter alia*: "(1) [k]nowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data," or "(2) [k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network."

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

including Slate's confidential, proprietary information and trade secrets."], and ¶ 164 ["Dahlin has violated California Penal Code § 502(c)(2) by knowingly accessing and without permission taking, coping, or making use of data, documents, information and files from Slate's computer(s), computer system(s) or computer network(s), including but not limited to Slate's confidential, proprietary information and trade secrets."].) Dismissal of such "fact-barren and vague allegations" is required. *See Sunbelt Rentals*, 43 F. Supp. 3d at 1033.

The CCDAFA claim also fails because Slate does not allege that Dahlin acted beyond the scope of his employment. California Penal Code section 502(h)(1) contains an employee safe harbor provision, which provides that "[s]ubdivision (c) *does not apply to punish any acts which are committed by a person within the scope of lawful employment*. For purposes of this section, a person acts within the scope of employment when the person performs acts which are reasonably necessary to the performance of their work assignment." (emphasis added).

California Penal Code Section 502 "is not intended to cover ordinary employees doing ordinary computer things in their ordinary jobs." *Regents of the Univ. of California*, 2016 WL 4096078, at *7; *PQ Labs, Inc. v. Yang Qi*, No. 12-0450 CW, 2014 WL 334453, at *10 (N.D. Cal. Jan. 29, 2014) ("Section 502(h) creates a safe harbor from liability for employees who access a computer or computer network within the scope of their employment."); *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) ("If access were by definition unauthorized, there would be no need to exempt employees acting within the scope of their lawful employment.").

Slate does not and could not allege that Dahlin's alleged acts were committed outside his scope of lawful employment. To the contrary, Slate admits that it assigned Dahlin to work on ClickUp's matters during his employment, and that his very job duties required the exchange of materials from Slate's systems with ClickUp. (*See, e.g.*, Compl., ¶ 63 ["Dahlin worked on a variety of tasks for ClickUp, including a reseller agreement, cease and desist, sublease agreement, and software as a service

(SaaS) agreement."].) And, of course, ClickUp was paying Slate for Dahlin to perform these tasks as a Slate employee.

In short, the Complaint offers no reason for the Sixth Cause of Action to survive. *See Regents of the Univ. of Cal.*, 2016 WL 4096078, at *7 (granting motion to dismiss Section 502(c) claims because "[t]here [were] no allegations that any of these four individual Defendants were acting beyond the scope of their employment while acting in ways which might violate" section 502(c)).

### E.   Slate Fails To State A Claim For Fraud.

The Seventh through Ninth Causes of Action assert three fraud theories against Dahlin: (1) intentional misrepresentation; (2) negligent misrepresentation; and (3) fraudulent concealment. Slate fails to state a claim for fraud under any theory.

### 1.   The Economic Loss Doctrine Bars The Fraud Claims.

As an initial matter, the fraud claims fail because Slate has simply repackaged its breach of contract allegations as tortious fraud claims. California's economic loss rule "bars tort claims based on contract breaches, 'thereby limiting contracting parties to contract damages.'" *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015) (citation omitted.) Conduct charged with breach of contract "is tortious only when some independent duty arising from tort law is violated." *Id*. "This rule serves to prevent every breach of a contract from giving rise to tort liability and the threat of punitive damages." *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012). "Otherwise, every intentional breach of a contract could potentially give rise to a claim in tort, collapsing the distinction between contract and tort law." *Audigier Brand Mgmt. v. Perez*, 2012 WL 5470888, at *5 (C.D. Cal. Nov. 5, 2012). Moreover, "the rationale for the rule is particularly strong where a party alleges a claim based on 'commercial activities that negligently or inadvertently [went] awry.'" *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1104 (citation omitted).

*JMP Securities* is instructive. In *JMP Securities*, the plaintiff brought claims

for breach of contract, fraud, and negligent misrepresentation after the defendant hired him as a financial advisor and then failed to pay plaintiff fees pursuant to a contract. 880 F. Supp. 2d at 1032. Plaintiff alleged that defendant misrepresented to him that it would pay him a higher fee when defendant knew all along that it would not. *Id*. at. 1042. The court held that California's economic loss rule barred the fraud claims, concluding that "[plaintiff] has taken the allegations underpinning a straightforward claim for breach of a commercial contract and recast them as torts. The tort claims consist of nothing more than [defendant's] alleged failure to make good on its contractual promises." *Id*. at 1042–43; *see also UMG Recordings*, 117 F. Supp. 3d at 1106 (dismissing fraud claims under economic loss rule).

Likewise, here, the core of Slate's fraud claims is the allegation that Dahlin misrepresented his interest in working for Slate. (*E.g.,* Compl., ¶¶ 171–173 ["In March 2020, Dahlin communicated to Slate by email that he was very interested in working for/with Slate," but "had knowledge at the time that these representations were false[.]"].) Slate thus accuses Dahlin of entering into an employment contract with Slate while knowing that he instead wanted to work for ClickUp. (*See, e.g.*, *id*., ¶ 173.) Setting aside the irrationality of this accusation because Dahlin did not meet ClickUp until he was assigned to work for them by Slate, the fraud allegations are clearly based on Slate's belief that Dahlin breached his at-will agreement by choosing to move to another job. Slate certainly does not allege a breach of any independent duty arising from tort law, and thus the Seventh through Ninth Causes of Action are barred by the economic loss doctrine. *See JMP Sec.,* 880 F. Supp. 2d at 1043.

## 2. Slate Does Not Plead A Misrepresentation Of Fact.

The misrepresentation claims also fail on their face. To state a claim for intentional misrepresentation, a plaintiff must plead a: (1) misrepresentation of a material fact; (2) knowledge of falsity by defendant of the material fact; (3) intent of defendant to defraud plaintiff; (4) justifiable reliance of plaintiff on the material fact; and (5) damages. *Rasidescu*, 435 F. Supp. 2d at 1099. The elements of a negligent

misrepresentation claim are materially the same, except that a plaintiff need not establish scienter or intent to defraud. *See Mueller v. San Diego Entm't Partners, LLC*, 260 F. Supp. 3d 1283, 1296 (S.D. Cal. 2017).

To be actionable under either theory, a misrepresentation must generally be as to a past or existing material fact. *Id.*; *see also Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999) ("[P]redictions as to future events are deemed opinions, and not actionable by fraud."); *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 154 (1991) (same). Indeed, "[t]he law is quite clear that expressions of opinion are not generally treated as representations of fact, and thus are not grounds for a misrepresentation cause of action. Representations of value are opinions." *Mueller*, 260 F. Supp. 3d at 1296–97 (citation omitted.) Further, "general statements of optimism" are not actionable. *See Glen Holly Entm't, Inc.*, 100 F. Supp. 2d at 1097.

Here, Slate does not allege that Dahlin made a single misrepresentation as to a "past or existing material fact." The Complaint lists only the following alleged misrepresentations: (1) "In March 2020, Dahlin communicated to Slate by email that he was very interested in working for/with Slate" (Compl., ¶¶ 171, 179); (2) "In May 2020, after he accepted full-time employment with Slate, Dahlin informed Slate in a Slack message that he was optimistic that Slate could build 'something solid and scalable' with him on Slate's transactional team" (*id*., ¶¶ 172, 180). ***That is it***.

Such statements are clearly not representations of past or existing material fact. Rather, they are – at best – general statements of optimism and predictions as to future events, or opinions, which are not actionable, as a matter of law. *See Glen Holly Entm't, Inc.*, 100 F. Supp. 2d at 1093–97; *Mueller*, 260 F. Supp. 3d at 1296–97. To even suggest that someone is liable for fraud simply for stating he is "interested" in working for a company and "optimistic" about the company's future, is absurd.

Even accepting Slate's allegations as true, the Complaint fails to state a claim for intentional or negligent misrepresentation, and thus the Seventh and Eighth

Causes of Action should be dismissed.

### 3.    Slate Does Not Plead Concealment Or Reliance.

The Ninth Cause of Action for fraudulent concealment also fails on its face. To state a claim for fraud based on concealment, a plaintiff must establish, among other things, a concealment — that the defendant concealed or suppressed a material fact, and reliance — that the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact. *Vegas Diamond Properties, LLC v. Wiggins*, 2012 WL 1340437, at *5 (S.D. Cal. Apr. 18, 2012). Slate, again, cannot even satisfy the pleading standard.

First, the Complaint does not allege a "concealment." Slate alleges that Dahlin "intentionally failed to disclose to State that he was getting poached by State's client, ClickUp, in May 2020." (Compl., ¶ 190.) However, elsewhere in the Complaint, Slate also alleges that, "[o]n or around May 21, 2020, Dahlin brought up ClickUp's proposal to join its in-house team with Kelly DuFord ("DuFord"), the Founder and Managing Partner of Slate Group." (*Id*., ¶ 71.) The Complaint also admits that Dahlin's first inquiry from ClickUp was communicated on May 14, 2020. (*Id*., ¶ 66.) In other words, even the face of Slate's own pleading admits that Dahlin told Slate about his offer to join ClickUp ***within a week of beginning the job discussions with ClickUp***. (*See id*., ¶ 71.) This is far from concealment of a material fact.

Slate's other concealment allegation fares no better. Specifically, Slate claims that, "[i]n June 2020, Dahlin disclosed to Slate that he was resigning from his employment with Slate, but intentionally failed to disclose that he was leaving Slate to start employment with Slate's client, ClickUp." (Compl., ¶ 191.) But, again, the Complaint also admits that, "[o]n June 21, 2020, Dahlin called Mr. Weiner [Slate's then Lead Litigation Attorney and Partner] over FaceTime" and "[d]uring the FaceTime calls on June 21, 2020, Dahlin informed Mr. Weiner that ClickUp offered Dahlin a job as in-house attorney." (*Id*., ¶¶ 93–94.) Again, by Slate's own admission, Dahlin did in fact disclose to Slate that he was leaving Slate for a job at ClickUp.

Thus, even taking Slate's allegations as true, Slate fails to plead a "concealment."

And Slate also fails to plead "reliance." The Complaint states that, "[h]ad Slate known of the omitted information, Slate would have behaved differently by not hiring Dahlin or assigning him to any of its clients." (Compl., ¶ 194.) But, again, Slate's own allegations contradict this. The alleged "concealments" occurred in late May and June 2020. (*Id.*, ¶¶ 190–191.) Slate hired Dahlin as a "contractor" in March and as an employee on April 21, 2020, and Slate alleges that Dahlin "was assigned a caseload of clients with varying transactional matters." (*Id.*, ¶¶ 52–53.) In other words, how could Slate had acted "differently by not hiring Dahlin or assigning him to any of its clients" when the alleged concealments happened *after* Slate hired him and assigned him to work with clients? Slate's attempt to sock its former associate with a fraud claim defies all logic. For these reasons as well, Slate's concealment claim fails.

## F.    Slate Fails To State A Claim For Breach Of Contract.

Trying to sue its former at-will employee for choosing to take a better job, Slate claims that, pursuant to the NDA and a written employment contract, Slate and Dahlin agreed he "would not compete with Slate or use Slate's trade secret information or its confidential business and proprietary information for Dahlin's benefit or to the detriment of Slate," and that "[b]y engaging in the acts and omissions alleged herein, Dahlin materially breached the written employment contract and nondisclosure agreement." (Compl., ¶¶ 201, 203.) Slate also has the audacity to claim that "[b]y resigning from Slate to work with ClickUp, Dahlin effectively breached his terms of employment with Slate[.]" (*Id.*, ¶ 97.) This is improper and, in any event, insufficient to support a claim for breach of contract.

*First*, to the extent that Slate's contract claim is premised on Dahlin resigning his at-will employment to work elsewhere, such a claim is void as a matter of law. California Business and Professions Code section 16600 provides that, "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." The

California Supreme Court has made clear that, "an employer cannot by contract restrain a former employee from engaging in his or her profession, trade, or business unless the agreement falls within one of the exceptions to the rule." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946–47 (2008). Section 16600 represents "settled legislative policy in favor of open competition and employee mobility." *Id.* at 946. "The law protects Californians and ensures 'that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice.'" *Id.* (citation omitted). In addition, California Rule of Professional Conduct 5.6(a)(1) prohibits a lawyer and member of the California Bar like DuFord from offering or making an "employment, or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship[.]"

Slate's claim that Dahlin breached the terms of his employment "[b]y resigning from Slate to work with ClickUp" (Compl., ¶ 97) flies in the face of California's black letter law and well-settled public policy. Remarkably, the Complaint touts that DuFord told Dahlin "he was not permitted to take on ClickUp as a personal client or depart to ClickUp to become its in-house counsel." (*Id.*, ¶ 72.) Apparently, Slate believes that its employees and clients are its property and that it holds the rights to their mobility. But the law is clear: An employer cannot restrain an employee from engaging in his profession somewhere else, and "[c]lients are free to come and go[.]" *See, e.g., Barney v. Burrow*, 558 F. Supp. 2d 1066, 1082 (E.D. Cal. 2008).

Moreover, the terms of the NDA do not – and could not – prohibit Dahlin from "competing" with Slate *after* employment. Rather, Section 8 of the NDA prohibits "competition *during* engagement or employment." (Compl., Ex. A § 8 (emphasis added); *see also id.*, ¶ 40 ["Section 8 of the NDA provides that, *while employed by Slate*, Dahlin would not engage in, be employed by, serve as a consultant . . ."] (emphasis added).) And Slate does not allege that Dahlin competed with Slate during his employ, nor could it. Any work that Dahlin performed for ClickUp was at Slate's direction, paid for by ClickUp, and presumably under DuFord's supervision. (*See id.*,

¶ 61 ["Dahlin worked on ClickUp's matters under the supervision of Ms. DuFord.]").
Under any scenario, Dahlin leaving Slate cannot support a breach of contract claim.

*Second*, the Complaint's conclusory assertion that Dahlin used Slate's "trade secret information or its confidential business and proprietary information" does not save the contract claim because Slate has not pled facts to support such an allegation. *Pellerin v. Honeywell International, Inc.*, is instructive. There, an employer brought claims for trade secret misappropriation and breach of contract, among others, against its former employee. 877 F. Supp. 2d 983, 987 (S.D. Cal. 2012). The employer alleged that the employee breached an employment agreement and NDA, which "contained promises not to disclose any trade secrets or other confidential information." *Id*. at 990. At the outset, the *Pellerin* court dismissed the employer's misappropriation claim, because it failed to describe the alleged trade secrets with sufficient particularity and failed to allege facts to establish misappropriation. *Id*. at 988–89. The court also dismissed the breach of contract claim, explaining:

> [The employer] has not pled what the 'trade secrets and/or confidential information' are or whether the confidential information falls within the terms of the agreements, as discussed above. In addition, [the employer] has not pled facts to establish a breach of the Employment Agreement or NDA, because it has not pled facts to establish misappropriation, as discussed above. Such boilerplate allegations of breach are insufficient.

*Id*. at 990.

Slate's contract claim suffers the same deficiencies and should be dismissed. As discussed, the misappropriation claims fail because Slate failed to identify the so-called trade secrets with particularity or allege any facts to show misappropriation. (*See* Section IV(A), *supra*.) Further, Slate has not pled facts to show breach of the NDA. (*See* Section IV(F), *supra*.) "Such boilerplate allegations of breach are insufficient." *Id.* at 990; *Green Crush LLC v. Paradise Splash I, Inc.*, 2018 WL 4940824, at *6 (C.D. Cal. Mar. 8, 2018) (dismissing contract claim where plaintiff failed to plead alleged trade secrets, misappropriation, or breach). There is thus no reason for the Tenth Cause of Action to survive.

1
2
**G.    Slate Fails To State A Claim For Breach Of The Covenant Of Good Faith And Fair Dealing.**

3    The Eleventh Cause of Action also fails for several reasons. First, Slate's claim

4    for breach of the implied covenant of good faith and fair dealing should be dismissed

5    because it is duplicative of Slate's breach of contract claim. "[A] breach of the

6    implied covenant of good faith and fair dealing involves something beyond breach

7    of the contractual duty itself." *Kulberg v. Washington Mut. Bank*, 2011 WL 1431512,

8    at *5 (S.D. Cal. Apr. 14, 2011) (citation omitted). Therefore, if a plaintiff's

9    allegations of a breach of such duty "do not go beyond the statement of a mere

10   contract breach and, relying on the same alleged acts, simply seek the same damages

11   or other relief already claimed in a companion contract cause of action, they may be

12   disregarded as superfluous as no additional claim is actually stated." *Lakeland Tours*,

13   2014 WL 12570970, at *9 (citation omitted).

14   Slate's allegations for breach of the implied covenant are identical to its

15   allegations for breach of contract. (*Compare* Compl., ¶¶ 201, 203 ["Pursuant to their

16   agreements, Slate and Dahlin agreed . . . that Dahlin would not . . . use Slate's trade

17   secret information or its confidential business and proprietary information for

18   Dahlin's benefit or to the detriment of Slate," and alleging that Dahlin breached the

19   agreements "[b]y engaging in the acts and omissions alleged herein[.]"], *with* Compl.,

20   ¶ 208 ["Dahlin breached the implied covenant of good faith and fair dealing when he

21   utilized Slate's trade secrets and confidential business and proprietary information to

22   engage in a business relationship with Slate's client ClickUp."].) Both claims are

23   based on Dahlin's alleged use of trade secrets or confidential information. As such,

24   the implied covenant claim is superfluous and should be dismissed.

25   In addition, the implied covenant claim is subject to dismissal for failure to

26   allege necessary facts. Again, Slate has not identified the alleged "trade secrets and

27   confidential business and proprietary information," nor any facts to support a breach.

28   (*See* Compl., ¶ 207–208.) "Such boilerplate allegations of breach are insufficient."

*See Pellerin*, 877 F. Supp. 2d at 991. Accordingly, and for many reasons, the Eleventh Cause of Action must be dismissed.

### H.    Slate Fails To State A Claim For Breach Of Duty Of Loyalty.

As discussed, the Twelfth and Thirteen Causes of Action for breach of duty of loyalty and aiding and abetting breach of duty of loyalty are preempted by CUTSA. (*See* Section IV(B)(1), *supra.*) However, these claims also fail for additional reasons.

"The duty of loyalty is 'breached, and may give rise to a cause of action in the employer, when [an] employee takes action which is inimical to the best interests of the employer.'" *In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1050 (N.D. Cal. 2009). However, "this cause of action has only been applied in the context of an employee transferring his loyalty from his employer to a competing business by using or disclosing confidential information." *Id.*

Slate does not allege any facts to demonstrate how Dahlin's alleged use of Slate's information was "inimical to the best interests of" Slate. To the contrary, Slate admits that Dahlin was accessing and using Slate's documents within the scope of his assignment to provide services to ClickUp as a client of Slate, at Slate's direction. (*See* Compl., ¶¶ 61, 63, 64.) The absurdity of this claim is further evidenced by the fact that **Slate and ClickUp are not competing businesses**. Slate is a law firm, and ClickUp is a tech company and now a former client of Slate. Because ClickUp and Slate are not competing businesses, State cannot maintain the duty of loyalty claim. *See In re Brocade*, 615 F. Supp. 2d at 1050 (dismissing duty of loyalty claim without leave to amend where former employee did not transfer to a competing business).

Slate similarly cannot maintain the aiding and abetting claim, which "rises and falls" with the breach of duty of loyalty claim and, therefore, should be dismissed. *See Anokiwave*, 2018 WL 4407591, at *5. Moreover, Slate has not plead the two foundational elements of an aiding and abetting claim – i.e., that ClickUp, Evans, Smith and Brummette had "actual knowledge" of Dahlin's alleged breach of duty,

and that they "substantially assisted" the alleged breach.[7] (*See* Compl., ¶¶ 217–218.) Slate's conclusory legal assertions are plainly deficient. *See Hurtado Lucero v. IRA Servs., Inc.*, 2020 WL 553941, at *6 (N.D. Cal. Feb. 3, 2020) (dismissing aiding and abetting claim where plaintiff did not plead facts to show defendants participated in wrongdoing with knowledge); *McFall v. Stacy & Witbeck, Inc.*, 2016 WL 6248882, at *6–7 (N.D. Cal. Oct. 26, 2016) (dismissing claim where allegations did not support a "plausible inference" that defendant had requisite knowledge, nor that defendant's actions were a substantial factor in causing plaintiff's harm).

## I.     Slate Fails To State A Claim For Interference.

Slate asserts multiple "interference" claims against ClickUp, Evans, Smith, and Brummette: (i) intentional interference with contractual relations; (ii) negligent interference with contractual relations; (iii) intentional interference with prospective economic relationship; (iv) negligent interference with prospective economic relationship; and (v) interference of contract in at-will relationship. As discussed, these claims (the Fourteenth through Eighteenth Causes of Action) are preempted by CUTSA and must be dismissed. (*See* Section IV(B)(2), *supra.*)

Consistent with the other substantial deficiencies in the Complaint, however, the interference claims also fail for two additional, independent reasons. First, claims for interference with contract are improper as a matter of law when the contract at issue is "at-will." And, second, Slate does not and could not allege facts to save its remaining claims for interference with prospective economic relationship.

---

[7] "California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1145 (2005). "Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." *Hardisty v. Moore*, 2015 WL 6393884, at *11 (S.D. Cal. Oct. 22, 2015) (citation omitted); *see also In re Woodbridge Investments Litig.*, 2020 WL 4529739, at *5 (C.D. Cal. Aug. 5, 2020). Further, "[s]ubstantial assistance requires a significant and active, as well as a knowing participation in the wrong, and a plaintiff must also allege that the defendant's conduct was a substantial factor in bringing about the injury allegedly suffered by the plaintiff." *Chang v. Wells Fargo Bank, N.A.*, 2020 WL 1694360, at *6 (N.D. Cal. Apr. 7, 2020) (citation omitted; internal brackets and marks omitted).

1  **1. The Fourteenth, Fifteenth And Eighteenth Causes of Action Fail As A Matter of Law Because Dahlin's Employment With Slate Was At-Will.**

2

3   "As a matter of law, a claim for interference with contract is improper if the

4 contract is 'at-will.'" *Lovesy v. Armed Forces Ben. Ass'n*, 2008 WL 696991, at *11

5 (N.D. Cal. Mar. 13, 2008). The California Supreme Court has held that, "inducing

6 the termination of an at-will employment relation may [only] be actionable under the

7 standard applicable to claims for intentional interference *with prospective economic*

8 *advantage*." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1144, 1152 (2004) (emphasis

9 added). This is because "the economic relationship between parties to contracts that

10 are terminable at will is distinguishable from the relationship between parties to other

11 legally binding contracts." *Id*. at 1151. Indeed, "if a party to a contract with the

12 plaintiff is free to terminate the contractual relation when he chooses, 'there is still a

13 subsisting contract relation; but any interference with it that induces its termination

14 is primarily an interference with the future relation between the parties, and the

15 plaintiff has no legal assurance of them. As for the future hopes he has no legal right

16 but only an expectancy; and when the contract is terminated by the choice of [a

17 contracting party] there is no breach of it." *Id*. 1151–52 (quoting Rest.2d Torts, §

18 768, com. *i*). "Under this analysis, an interference with an at-will contract properly

19 is viewed as an interference with a prospective economic advantage[.]" *Id*. at 1152.

20   Courts routinely dismiss claims for interference with an at-will contract with

21 prejudice at the pleading stage. *See Lovesy*, 2008 WL 696991, at *11 (dismissing

22 with prejudice plaintiffs' claim for intentional interference with contract because

23 contracts were at-will); *see also Transcription Commc'ns Corp. v. John Muir Health*,

24 2009 WL 666943, at *9 (N.D. Cal. Mar. 13, 2009).

25   Here, it is undisputed that Dahlin was an at-will employee. (Compl., ¶ 249.)

26 The written offer from Slate expressly provides that "[t]he employment offered by

27 this letter is at-will. Either [Dahlin] or Slate Law Group may terminate [Dahlin's]

28 employment at any time on notice to the other, with or without cause." (*See* Wynn

Decl., Ex. C.) Accordingly, the Fourteenth, Fifteenth and Eighteenth Causes of Action fail as a matter of law and must be dismissed with prejudice.

### 2.      The Prospective Economic Relationship Claims Also Fail.

The Sixteenth and Seventeenth Causes of Action for intentional and negligent interference with prospective economic relationship fare no better (unsurprisingly). The California Supreme Court has held that "to recover for a defendant's interference with an at-will employment relation, a plaintiff must plead and prove that the defendant engaged in an independently wrongful act—i.e., an act 'proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard'—that induced the at-will employee to leave the plaintiff." *Reeves*, 33 Cal. 4th at 1145 (internal citation omitted). The Court emphasized that, "[u]nder this standard, *a defendant is not subject to liability for intentional interference if the interference consists merely of extending a job offer that induces an employee to terminate his or her at-will employment*." *Id*. at 1153 (emphasis added.) Indeed, "[a]dopting this standard of recovery in the context of at-will employment relations is particularly appropriate," because it "will promote the public policies supporting the right of at-will employees to pursue opportunities for economic betterment and the right of employers to compete for talented workers." *Id*. at 1145.

Slate's Complaint is devoid of any allegation of an "independently wrongful act" (i.e., an act proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard) by ClickUp, Evans, Smith, or Brummette that "induced" Dahlin to end his at-will employment at Slate. (*See* Compl., ¶¶ 234–247.) At most, Slate alleges that: Brummette "ask[ed] Dahlin if he was interested in working for ClickUp as its in-house counsel" (*id*., ¶ 66); another ClickUp associate said "We got the good news and I'm happy to hear that we might be able to get you full-time" (*id.*, ¶ 69); and Dahlin interviewed with ClickUp (*id.*, ¶¶ 68, 70). So what. The law is crystal clear that "one commits no actionable wrong by merely soliciting or hiring the at-will employee of another." *Reeves*, 33 Cal. 4th at 1145. As such, the

Sixteenth and Seventeenth Causes of Action should be dismissed, for this reason as well. *See, e.g., Power Integrations, Inc. v. De Lara*, 2020 WL 1467406, at *22 (S.D. Cal. Mar. 26, 2020) (dismissing claim where plaintiff "fail[ed] to allege an independently wrongful act").

## J.     Slate Fails To State A Claim For Unjust Enrichment.

As discussed, CUTSA preempts the Nineteenth Cause of Action for unjust enrichment. (*See* Section IV(B)(3), *supra.*) This claim also fails because Slate cannot pursue a quasi-contract theory while also claiming there is an enforceable contract.

"[U]njust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). *See also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract.") Accordingly, courts routinely dismiss claims for unjust enrichment with prejudice where the plaintiff pled the existence of an enforceable agreement between the parties. *See, e.g., World Surveillance Grp. Inc. v. La Jolla Cove Inv'rs, Inc.*, 2014 WL 1411249, at *2 (N.D. Cal. Apr. 11, 2014) (dismissing unjust enrichment claim with prejudice where plaintiff "explicitly pleaded the existence of enforceable agreements between the parties"); *Schertzer v. Bank of Am., N.A.*, 2020 WL 5759753, at *9 (S.D. Cal. Sept. 28, 2020) (dismissing unjust enrichment claim where there was a contract between the parties); *Klein v. Chevron U.S.A., Inc.,* 202 Cal. App. 4th 1342, 1389-90 (2012) (same).

Slate's claim for unjust enrichment is based on the conclusory assertion that "Dahlin has received the benefit of Slate's trade secret and confidential business and proprietary information." (Compl., ¶¶ 260, 263.) Setting aside the glaring pleading deficiencies, Slate has explicitly pled the existence of an enforceable agreement between the parties. (*See, e.g.*, *id.* at ¶ 199 ["On March 25, 2020, Slate and Dahlin entered into an NDA[.]]"; ¶ 200 ["On April 15, 2020, Slate and Dahlin entered into

a written employment contract[.]]"; ¶ 201 ["Pursuant to their agreements, Slate and Dahlin agreed . . . that Dahlin would not . . . use Slate's trade secret information or its confidential business and proprietary information. . ."]. Moreover, Slate's "unjust enrichment claim specifically incorporates by reference all of the preceding allegations, including those related to breach of contract." *Schertzer*, 2020 WL 5759753, at *9. (*See* Compl., ¶ 198.) And nowhere in the Complaint does Slate question the existence or enforceability of its agreements. The unjust enrichment claim must therefore be dismissed with prejudice.

Dismissal of the Nineteenth Cause of Action is also appropriate because Slate asserts both tort and statutory claims based on the same conduct. *See, e.g.*, *Top Agent Network, Inc. v. Zillow, Inc.*, 2015 WL 7709655, at *8 (N.D. Cal. Apr. 13, 2015) ("[I]n addition to its breach of contract and unjust enrichment claims, [plaintiff] alleges several statutory and tort claims–all based on the same underlying conduct. Given that its cursorily-pleaded unjust enrichment theory rests on allegations covered by other claims that provide for legal remedies, this claim is superfluous and, accordingly, dismissed."). This claim is "superfluous" and should be dismissed for this reason as well. *See id*.

**K.     Slate Fails To State A Claim For Unfair Business Practice.**

To the extent the UCL claim is premised on the alleged misappropriation of trade secrets, it is preempted by CUTSA. (*See* Section IV(B)(3), *supra.*) But this claim should be dismissed for at least two more reasons: Slate has neither pled a claim under either the "unlawful" or "unfair" prongs, nor alleged standing.

"[T]o state a claim under California's UCL, a Plaintiff must allege that Defendant engaged in an 'unlawful, unfair or fraudulent business act or practice[.]'" *Rudd*, 2009 WL 4282013, at *2 (citing Cal. Bus. & Prof. Code § 17200). While Section 17200 permits the "borrowing" of violations under other laws, "[i]f a plaintiff cannot state a claim under the predicate law, [], her Section 17200 claim also fails." *Id*. Further, conduct is "unfair" under the UCL only "when it 'offends an established

public policy or . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Stokes v. CitiMortgage, Inc.*, 2014 WL 4359193, at *11 (C.D. Cal. Sept. 3, 2014) (citation omitted). In "determining whether the challenged conduct is unfair . . . 'courts may not apply purely subjective notions of fairness.'" *Id*. Rather, "the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions." *Id*.

Slate does not adequately allege an "unlawful" or "unfair" business practice. The Complaint declares that "Dahlin breached his duty of loyalty owed to Slate, and he intentionally interfered with Slate's business relationship with its clients, as alleged above." (Compl., ¶ 265.) Slate also improperly incorporates each preceding paragraph in the Complaint, regardless of relevancy. *See Dreifort v. DJO Glob. Inc.*, 2019 WL 5578240, at *7 (S.D. Cal. Oct. 28, 2019) ("A 'shotgun pleading' is one 'that violates Rule 8's requirement of a 'short and plain statement' by 'incorporat[ing] each preceding paragraph, regardless of relevancy'"). Such threadbare and conclusory allegations are impermissible "shotgun pleading" and insufficient to state a UCL claim. *Id*. (dismissing UCL claim where "first paragraph of Plaintiff's UCL claim 'repeats, re-alleges, and incorporates by reference the above allegations as fully stated herein,'" and "remaining paragraphs allege the elements of a UCL claim in a conclusory manner and without any factual support").

Further, although Slate makes the bare allegation that Dahlin's conduct was "unfair," Slate does not identify the alleged "conduct" at issue, nor the "specific constitutional, statutory or regulatory provisions," that serve as the predicate. This is not enough to avoid dismissal. *See Stokes*, 2014 WL 4359193, at *11 (dismissing UCL claim where plaintiffs "failed to identify any '*specific* constitutional, statutory or regulatory provisions' that may serve as a predicate for their 'unfair' UCL claim").

The UCL claim also fails for lack of standing, which requires a plaintiff to "establish that they (1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir.

2009). A plaintiff must plead "that they suffered a distinct and palpable injury as a result of the alleged unlawful or unfair conduct." *Id*. at 960. "The requisite injury must be 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Id*.

Slate does not even try to plead specific allegations of economic harm or facts regarding alleged injury. It merely complains that its "business was disrupted" and it "has suffered damages." (Compl., ¶ 267.) This does not adequately allege a "concrete and particularized" economic injury as a result of alleged unlawful or unfair conduct. Thus, the Twentieth Cause of Action should be dismissed for all these reasons, too.

### L.   Slate Has Not Pled – And Could Not Plead – Facts Sufficient To State Any Claim Against Evans, Smith Or Brummette In Their Individual Capacities.

Slate alleges that Evans is ClickUp's chief executive officer (true), Smith is the chief financial officer and secretary (false), and Brummette is the agent for service (true). (*See* Compl., ¶ 62.) Based on their roles alone, the Complaint purports to assert eleven claims (the First through Fifth, and Thirteenth through Eighteenth Causes of Action) against Evans, Smith, and Brummette individually. This is entirely improper, ***and the total lack of any individualized factual allegations about these men more than suggests that Slate named Evans, Smith, and Brummette in bad faith***.

Although a corporate officer or director may be held personally liable for "torts which he authorizes or directs or in which he participates" (*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999)), "mere knowledge of tortious conduct by the corporation is not enough to hold a director or officer liable for the torts of the corporation absent other 'unreasonable participation' in the unlawful conduct by the individual." *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) (citation omitted). "As recognized by the Ninth Circuit, '[c]ases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the "guiding spirit" behind the wrongful conduct … or the "central figure" in the challenged corporate activity.'" *Id*.

For instance, in *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, 2015 WL 12731929, at *9 (C.D. Cal. May 8, 2015), the court dismissed all claims against a defendant in her individual capacity where the plaintiff failed to allege facts to satisfy the aforementioned standards, stating:

> Plaintiff's complaint only mentions Lee twice—it alleges that Lee is 'an owner, officer, and/or managing agent' of Fortune Dynamic…and asserts generally that Lee is 'the active, moving, conscious force behind the infringing activities alleged.'…***The fact that Lee is an owner, officer, or managing agent of Fortune Dynamic, standing alone, does not make her liable for the wrongful conduct of the corporation because the case law requires active, guiding participation.*** The second allegation recites this standard in the form of a conclusion and is unsupported by facts explaining how Lee participated in the allegedly wrongful conduct at issue in this case. Such conclusory pleading is insufficient to state a claim for relief. (Emphases added.)

Similarly, in *AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003), the court dismissed a trade secret claim brought against the founder, president and CEO of the defendant for insufficient allegations. The court reasoned that, "[d]espite plaintiff's allegations that [officer] willfully conspired to misappropriate [plaintiff's] trade secrets and that he expressed an interest in hiring [plaintiff's employee] away from [plaintiff]. . . plaintiff falls to allege sufficient conduct by [officer] to state a claim for statutory trade secret misappropriation." *Id*. Specifically, "[w]hile plaintiff argues that [officer] participated directly in the tortious conduct . . . nowhere does the complaint sufficiently allege that [officer] acted beyond his capacity as a corporate officer of [the company]." *Id*.

Slate's pleading suffers the same deficiencies. In its forty-page Complaint, the only allegations Slate makes against Brummette are that he "ask[ed] Dahlin if he would be interested in working for ClickUp as its in-house counsel," "informed Dahlin that he created a ClickUp email to use for ClickUp's own correspondence portals," "advised Dahlin that his Slate account was merely a 'guest' account," "informed Dahlin that his ClickUp email would allow Dahlin full access to ClickUp's

Slack spaces," and "provided Dahlin access to ClickUp's Human Resources space." (Compl., ¶¶ 66, 73, 74, 75, 76.) That is all. And as for Evans and Smith, Slate does not offer a ***single*** fact as to how they were allegedly involved.

Slate does not provide anything to suggest that any of these individuals, let alone all three of them, were the "'guiding spirit' behind the wrongful conduct, . . . or the 'central figure' in the challenged corporate activity." *See Wolf Designs*, 322 F. Supp. 2d at 1072. Even if they are officers or agents of ClickUp, "standing alone, [that] does not make [them] liable for the wrongful conduct of the corporation because the case law requires active, guiding participation." *See Deckers Outdoor*, 2015 WL 12731929, at *9. Accordingly, at an absolute minimum, individual defendants Evans, Smith and Brummette should be dismissed, with prejudice.

## M. Smith Is Not Subject To Personal Jurisdiction.

Although Slate claims Smith is a "resident of San Diego County, California" (Compl., ¶ 5) – Slate is wrong. Smith does not reside, and has never resided in California. (Wynn Decl., Ex. A [Smith Decl., ¶¶ 2, 3].) In fact, Smith does not work in, or conduct any business in, California. (*Id*., ¶ 4.) This is obviously insufficient to establish general jurisdiction. *See, e.g., Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).

Moreover, Smith has zero connections to Slate or the claims made by Slate in this litigation, and thus there is absolutely no basis for specific jurisdiction either. "In order for a state court to exercise specific jurisdiction, 'the *suit* 'must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Id.* (citation omitted). This means that there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id*. (citation omitted.)

Ninth Circuit courts use a three-prong test to determine whether a non-resident is subject to specific personal jurisdiction: (1) "the non-resident must purposefully direct his activities" or conduct some transaction with the forum or resident thereof;

(2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "[P]laintiff bears the burden of satisfying the first two . . ." *Id.*

There is nothing to support finding specific personal jurisdiction over Smith. Of course, Slate "cannot establish jurisdiction by alleging bare jurisdictionally-triggering facts without providing some evidence of their existence." *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 325 F. Supp. 3d 1088, 1095 (S.D. Cal. 2018). (*See* Compl., ¶ 14.) And Slate fails to offer a single factual allegation as to how Smith "purposefully directed" activities at the state, or how Slate's claims arise out of his "forum-related activities." Nor could it. Smith is not an employee, officer, or board member of ClickUp, and he does not conduct business in California. (Wynn Decl., Ex. A [Smith Decl., ¶¶ 4, 8, 9].) He has not had any communications with Slate, or any of its employees, and he has not had any communications with Dahlin. (*Id.*, ¶¶ 10–11.) In fact, prior to the filing of this lawsuit, Smith did not have any communications with any employee or officer of ClickUp regarding Dahlin. (*Id.*, ¶ 12.) In short, there is no legitimate reason to name Smith in this litigation,[8] and Smith respectfully requests an order dismissing him from the action.

## V.   CONCLUSION

For these reasons, Defendants respectfully request that the Court grant this motion and dismiss the Complaint, without leave to amend.

---

[8] To avoid briefing on this issue, counsel for Defendants provided Slate a copy of Smith's Declaration, on or about October 22, 2020, and requested that Slate voluntarily dismiss Smith. (Wynn Decl., ¶ 2 & Exs. A, B.) DuFord asked whether Smith had "ever visit[ed]" California and other irrelevant questions. (*See id.*, Ex. B.) DuFord ultimately declined to dismiss Smith, citing an outdated filing listing Smith as a prior officer for ClickUp. (*Id.*) But, of course, merely being listed as an officer is insufficient to confer personal jurisdiction. Even if Smith was an officer of ClickUp, which he is not, the law is clear that "[t]he mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents, and employees are suable locally as well." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1119–20 (C.D. Cal. 2009); *see also Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989). Unquestionably, each defendant's contacts with the forum state must be assessed individually.

1

2

Dated:  November 18, 2020

COOLEY LLP

3

4

By: */s/ Summer J. Wynn*
　　　Summer J. Wynn

5

6

7

Attorneys for Defendants
DEREK DAHLIN, BRIAN EVANS,
ROBERT SMITH, WES BRUMMETTE
and MANGO TECHNOLOGIES, INC.
DBA CLICKUP

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

41