# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

WHITESLATE, LLP DBA SLATE LAW GROUP,

Plaintiff,

v.

DEREK DAHLIN, et al.,

Defendants.

Case No.:  20-CV-1782 W (BGS)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DOC. 11]**

Defendants Derek Dahlin, Brian Evans, Robert Smith, Wes Brummette, and Mango Technologies, Inc. DBA ClickUp ("ClickUp") (collectively "Defendants") move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).  Plaintiff Whiteslate, LLP DBA Slate Law Group ("Slate") opposes.

The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d)(1).  For the reasons stated below, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the motion to dismiss [Doc. 11].

//

//

1

# I.   BACKGROUND

The following allegations are taken from the Complaint.  (*Compl.* [Doc. 1].)

On March 9, 2020, Slate conducted a formal interview with Derek Dahlin ("Dahlin") for a position at Slate as an associate attorney.  (*Id*. ¶ 20.)  On March 10, 2020, Slate made an offer to Dahlin for the position, which he rejected because he wanted to remain employed at the company he was working for at the time.  (*Id.* ¶¶ 21–23.) However, Dahlin expressed interest in working for Slate as a 1099 independent contractor.  (*Id.* ¶ 24.)  Slate accepted Dahlin's request and Dahlin began work at Slate as an independent contractor on March 19, 2020.  (*Id.* ¶¶ 26–27.)

On March 25, 2020, as part of Slate's onboarding process, Dahlin reviewed Slate's Non-Disclosure and Confidentiality Agreement ("NDA"), which is required for all Slate employees and independent contractors.  (*Id.* ¶¶ 28–29, 35.)  Dahlin signed and returned the NDA the same day.  (*Id.* ¶ 32.)  Among the relevant language of the NDA is that Dahlin "shall not use, disclose, or cause the use or disclosure of any Confidential and Proprietary Information and/or Trade Secret Information for any purpose other than to diligently carry out the negotiations and undertakings . . . under this Agreement."  (*Id.*, Ex. A § 8.)

Shortly after Dahlin began working at Slate as an independent contractor, Dahlin expressed discontent working for his full-time employer and began negotiations with Slate to start working as a full-time employee.  (*Id.* ¶¶ 43–45.)  On April 14, 2020, Slate extended another offer to Dahlin by letter for the same associate attorney position he initially interviewed for.  (*Id.* ¶¶ 47–48.)  On April 15, 2020, Dahlin accepted full-time employment with Slate by signing and returning the offer letter that indicated an anticipated start date of April 21, 2020.  (*Id.* ¶¶ 48–49.)  By signing and returning the letter, Dahlin effectively agreed to and accepted Slate's employment terms, including terms in the NDA that Dahlin signed on March 25, 2020.  (*Id.* ¶¶ 50–51.)  On April 21, 2020, Dahlin began working as a full-time employee at Slate.  (*Id.* ¶ 52.)

2

As a full-time associate transactional attorney, Dahlin was assigned to oversee the cases of several clients, one being ClickUp.  (*Id.* ¶¶ 53–54.)  ClickUp had been a client of DuFord Law, which was subsequently bought out by Slate, since October 3, 2019.  (*Id.* ¶¶ 55–56.)  Dahlin began working with ClickUp on April 9, 2020, when he was still an independent contractor for Slate.  (*Id.* ¶¶ 59–61.)  Dahlin continued working with ClickUp after becoming a full-time Slate employee under the supervision of Kelly DuFord ("DuFord"), the managing partner of Slate.  (*Id.* ¶¶ 60–61.)

On April 9, 2020, Dahlin sent an email introducing himself as the main point of contact for the officers of ClickUp at the time: Brian Evans ("Evans"), chief executive officer; Robert Smith ("Smith"), chief financial officer and secretary; and Wes Brummette ("Brummette"), agent for service of process.  (*Id.* ¶ 62.)  Dahlin worked on various transactional matters for ClickUp through June 2020.  (*Id.* ¶¶ 63–64.)

On May 14, 2020, Brummette sent a message through Slack, Slate's client correspondence portal, asking Dahlin whether he would be interested in an in-house counsel position at ClickUp.  (*Id.* ¶ 66.)  Dahlin responded that he was interested in exploring this role with ClickUp; Brummette and Dahlin subsequently set up an informational interview the following day on May 15, 2020.  (*Id.* ¶¶ 67–68.)  The afternoon after the interview, another ClickUp officer messaged Dahlin through Slack, "We got the good news and I'm happy to hear that we might be able to get you full-time." (*Id.* ¶ 69.)  Dahlin was then requested to interview with another ClickUp attorney for the in-house counsel position.  (*Id.* ¶ 70.)

On May 21, 2020, Dahlin met with DuFord and brought up ClickUp's offer for the in-house counsel position.  (*Id.* ¶ 71.)  DuFord explained to Dahlin that he was not permitted to take on ClickUp as a personal client, nor was he allowed to leave Slate for ClickUp for the in-house counsel position pursuant to the NDA that he had signed.  (*Id.* ¶ 72.)

On June 1, 2020, Brummette messaged Dahlin via Slate's Slack portal informing Dahlin that he had created a ClickUp email for Dahlin to access ClickUp's own

3

correspondence portal, also through Slack, which granted Dahlin limited guest access to ClickUp's portal.  (*Id.* ¶¶ 73–74.)  Dahlin then instructed Brummette to close out Dahlin's Slate email from ClickUp's Slack spaces.  (*Id.* ¶ 77.)  Slate alleges that during the time Dahlin was negotiating employment with ClickUp, Dahlin was providing ClickUp with various documents, templates, and other work product belonging to Slate. (*Id.* ¶¶ 78–79.)  The alleged documents are password-protected in Cloud storage and only accessible by employees who are interviewed and vetted by DuFord.  (*Id.* ¶¶ 79, 81.) These documents are only accessible to employees after onboarding and signing Slate's NDA, and when employees terminate employment with Slate, their access to the documents is immediately removed.  (*Id.* ¶¶ 83–85.)

On June 16, 2020, Dahlin sent a formal resignation by email providing two weeks' notice to Duford and Slate's then Lead Litigation Attorney and Partner, Michael Weiner ("Weiner").  (*Id.* ¶¶ 86–89.)  Dahlin stated in the letter that after resigning, he intended to take some time off work and fly to Vermont on July 2, 2020.  (*Id.* ¶¶ 90, 93.)  On June 21, 2020, Dahlin called Weiner via FaceTime informing Weiner of ClickUp's offer to Dahlin for the in-house counsel position and that he intended to take the job.  (*Id.* ¶¶ 93–95.)  Weiner instructed Dahlin to speak with DuFord about moving to a client.  (*Id.* ¶ 96.)

On September 10, 2020, Plaintiff filed this lawsuit against Defendants.  The Complaint alleges the following causes of action against all Defendants: misappropriation of trade secrets under the Federal Defend Trade Secrets Act, misappropriation of trade secrets under the California Uniform Trade Secrets Act, copyright infringement, vicarious copyright infringement, and contributory copyright infringement.  (*Id.* [Doc. 1].)  The Complaint alleges the following causes of action against Defendants Evans, Smith, Brummette, and ClickUp: aiding and abetting breach of duty of loyalty, intentional interference with contractual relations, negligent interference with contractual relations, intentional interference with prospective economic relationship, negligent interference with prospective economic relationship, and interference of contract in an at-will relationship.  (*Id.*)  Plaintiff alleges the following causes of action against Defendant

Dahlin only: violation of the California Computer Data Access and Fraud Act, fraud based on intentional misrepresentation, fraud based on negligent misrepresentation, fraudulent concealment, breach of contract, breach of the covenant of good faith and fair dealing, breach of the duty of loyalty, unjust enrichment, and unfair business practice. (*Id.*)

Defendants now seek dismissal of each cause of action in Plaintiff's Complaint. (*See Mot. to Dismiss* [Doc. 11-1].)

## II.   LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007). But a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

Complaints must contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to rise above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend.  See DeSoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

Under Federal Rule of Civil Procedure 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Under our case law, "allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016) (internal quotations and citations omitted).  This standard "does not require absolute particularity or a recital of the evidence."  Id. (internal quotations and citations omitted).  Therefore, a complaint need not allege "a precise time frame," "describe in detail a single specific transaction," or indicate the "precise method" used to carry out the fraud.  Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).

## III.   DISCUSSION

### A.   Claims Against Corporate Officers in Their Individual Capacities

#### 1.   Personal Jurisdiction over Defendant Smith

Defendants assert that Smith is not subject to the personal jurisdiction of this Court because he does not live in California, nor does he have any connections to Slate or its claims.  (*Mot. to Dismiss* [Doc. 11-1] 39:12–20.)  Plaintiff refutes this argument in its Opposition.  (*Opp'n* [Doc. 20] 32:14–38:27.)

A defendant must have certain minimum contacts with the forum state in order to be subject to the personal jurisdiction of that forum.  International Shoe Co. v.

1   _Washington_, 326 U.S. 310, 316 (1945).  "California's long-arm statute . . . imposes no

2   limitations on personal jurisdiction beyond those required by due process."  Global

3   Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A., 972 F.3d 1101,

4   1109 (9th Cir. 2020).  Corporate officers must generally be the "guiding spirit and the

5   active directing hand in full charge of [the corporation's] operations" in order to be

6   subject to personal jurisdiction.  Allstar Mktg. Grp., LLC v. Your Store Online, LLC, 666

7   F.Supp. 2d 1109, 1121 (quoting International Mfg. Co. v. Landon, Inc., 336 F.2d 723,

8   728 (9th Cir. 2009)).

9        Here, Plaintiff alleges no facts that render Defendant Smith a "guiding spirit" of

10   any of the alleged claims or corporate operations.  Plaintiff only references Smith when

11   (1) identifying him as a resident of San Diego County (_Compl._ ¶ 5), identifying his role

12   as Chief Financial Officer and Secretary of ClickUp (_Id._ ¶ 62), and when merely asserting

13   legal conclusions without factual analyses (e.g., "Defendant[] Smith . . . personally

14   participated in the wrongful conduct of infringing on Slate's copyrighted contracts and

15   work-product").  (_Id._ ¶ 127.)

16        Additionally, Smith in his declaration asserts that he (1) has lived in South

17   Carolina for the past two and a half years, (2) does not live, reside, or own property in

18   California, (3) does not work in, or conduct any business in, California, (4) does not pay

19   taxes in California, (5) is not, nor has ever been, an employee of ClickUp, (6) is not an

20   officer or board member of ClickUp, and (7) has not had any communications with

21   Dahlin.  (_Decl. of Robert D. Smith_ [Doc. 11-2.] Ex. A ¶¶ 2–5, 8–9, 11.)  Although

22   Plaintiff alleges Smith was listed as CFO on a company filing, Plaintiff was "obligated to

23   come forward with facts, by affidavit or otherwise, supporting personal jurisdiction."

24   Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977).  Plaintiff

25   failed to acknowledge Smith's declaration and failed to establish the necessary minimum

26   contacts for personal jurisdiction in this forum.  The Court **GRANTS** Defendants'

27   motion to dismiss Smith from the action.

28

7

## 2.    Liability of Corporate Officers

Plaintiff brings eleven of its twenty claims against Evans and Brummette in their individual capacities.  (*Compl.* [Doc. 1.])  Defendants contend that Plaintiff has not pled sufficient facts to state a claim against Evans or Brummette in their individual capacities. (*Mot. to Dismiss* [Doc. 11-1] 37:12–18.)

In order to survive a motion to dismiss, a plaintiff must plead facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 570).  For tort claims, "[c]orporate officers can be liable for corporate actions where they are 'the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity.'" In re Boon Glob. Ltd., 923 F.3d 643, 651 (9th Cir. 2019) (quoting Facebook, Inc. v. Power Ventures, 844 F.3d 1058, 1069 (9th Cir. 2016)).

Here, Defendants assert that the only allegations made against Brummette are that he (1) asked Dahlin whether he was interested in working for ClickUp, (2) informed Dahlin that he created a ClickUp email with guest access for correspondence in ClickUp's own Slack portal, and (3) provided Dahlin access to ClickUp's human resources page.  (*Mot. to Dismiss* [Doc. 11-1] 38:23–39:2.)  Defendants also assert that Plaintiff presented no facts that demonstrate how Evans was involved in the purported claims.  (*Id.* 39:2–3.)

The Court agrees that Plaintiff's Complaint is deficient in its explanation of how Brummette and Evans are individually liable for the claims that Plaintiff alleges.  Further, in the Complaint, Plaintiff only addresses Evans when (1) identifying Evans as a resident of San Diego County (*Compl.* ¶¶ 5–6), (2) identifying Evans' role at ClickUp (*Compl.* ¶ 62), and (3) when asserting legal conclusions without factual analyses (e.g., "Defendants Evans [and] Smith . . . personally participated in the wrongful conduct of infringing on Slate's copyrighted contracts and work-product").  (*Id.* ¶ 127.)  Plaintiff has thus failed to allege any acts made by Brummette or Evans that render them the "guiding spirit" or "central figure" of the alleged wrongdoings.

8

Also, Plaintiff fails to respond in its Opposition to Defendants' argument that neither Evans nor Brummette are liable individually for Plaintiff's claims.  (*See Opp'n* [Doc. 20].)  A non-moving party's failure to respond to a claim in its opposition can constitute a concession of that claim.  See Foster v. City of Fresno, 392 F.Supp. 2d 1140, 1146–47 (E.D. Cal. 2005) (ruling that plaintiffs' failure to address a claim in their opposition and acknowledgement of their non-opposition at oral argument allowed the court to grant summary judgment in favor of defendants); Stichting Pensioenfonds ABP v. Countrywide Fin. Corp., 802 F.Supp. 2d 1125, 1132 (C.D. Cal. 2011) (holding that a plaintiff waived the argument that its fraud claim related back because plaintiff failed to raise the issue in its first amended complaint and opposition).  Pursuant to local rules, "[t]he opposition must contain a brief and complete statement of all reasons in opposition to the position taken by the movant."  Civ. L.R. 7.1(f)(3)(b).

Here, not only has Plaintiff failed to meet the standard to bring claims against corporate officers in their individual capacities, but it has also failed to respond to Defendants' original argument in the Opposition.  Accordingly, the Court **GRANTS** Defendants' motion to dismiss all of Plaintiff's causes of action against Evans, Smith, and Brummette in their individual capacities.

### B.  Misappropriation of Trade Secrets Claims Under the Federal Defend Trade Secrets Act and California Uniform Trade Secrets Act

Defendants seek to dismiss Plaintiff's claims for misappropriation of trade secrets under both the Federal Defend Trade Secrets Act ("DTSA") and California Uniform Trade Secrets Act ("CUTSA") for failure to state a claim.  (*Mot. to Dismiss* [Doc. 11-1] 4:24–5:6.)  The elements for trade secret misappropriation under DTSA and CUTSA are substantially similar, and many courts analyze the claims together.  See InteliClear, LLC v. ETC Glob. Holdings, Inc., 978 F.3d 653, 657 (9th Cir. 2020).  To bring a successful misappropriation of trade secrets claim, a plaintiff must prove "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret, and (3)

that the misappropriation caused or threatened damage to the plaintiff." <u>Id.</u> at 657–58.  A valid trade secret must consist of "(1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." <u>Id.</u> at 657.  The alleged trade secret must also be described with "sufficient particularity," "rather than using 'catchall' phrases or merely identifying categories of information." <u>Id.</u> at 658–59 (citing <u>Imax Corp. v. Cinema Techs., Inc.</u>, 152 F.3d 1161, 1167 (9th Cir. 1998)).

Defendants argue that Plaintiff pleads a trade secret that lacks the necessary specificity to constitute a valid trade secret.  (*Mot. to Dismiss* [Doc. 11-1] 5:20–8:11.) Indeed, Plaintiff merely identifies the alleged trade secret material as "contracts, document templates, and other work-product, as well as Slate's client list and database," and recites a boilerplate definition of what constitutes a valid trade secret.  (*Compl.* ¶ 107.)  The materials, as described by Plaintiff, do not constitute more than "catchall phrases" or "categories of information."  <u>See, e.g.,</u> <u>InteliClear</u>, 978 F.3d at 658 (ruling that plaintiff extensively identified aspects of its database logic and architecture with enough specificity such that a reasonable jury could conclude that the material was a protectable trade secret).  Here, Plaintiff has failed to establish a valid trade secret and, as a result, fails to establish a valid claim of misappropriation of trade secrets under both DTSA and CUTSA.  The Court **GRANTS** Defendants' motion to dismiss each misappropriation claim.

### C.     <u>Copyright Claims</u>

#### 1.     **Copyright Infringement**

Defendants argue that Plaintiff's common law copyright infringement claim must be dismissed because the federal Copyright Act preempts the claim.  (*Mot. to Dismiss* [Doc. 11-1] 17:1–5.)  The Copyright Act of 1976 preempts all common law claims based on any "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . and come within the subject matter of copyright."  17 U.S.C. § 301(a).

10

1    Plaintiff asserts that Defendants infringed on Plaintiff's right to "reproduc[e],

2    distribut[e], and/or publish[] the copyrighted contracts and other work-product drafted

3    and created by Slate Law Group . . . in violation of common law."  (*Compl.* ¶ 127.)

4    Under federal law, copyright owners are afforded the exclusive right "to reproduce . . . ;

5    to prepare . . . ; to distribute . . . ; [and] to display . . . the copyrighted work."  17 U.S.C. §

6    106.  Here, both the state common law and federal law entitle the owner to equivalent

7    rights within the general scope of copyright.  As such, Plaintiff's common law copyright

8    infringement claim is preempted by the Federal Copyright Act.

9    Additionally, Defendants assert that Plaintiff concedes each copyright claim for its

10    failure to address and respond to Defendants' argument in their Motion to Dismiss.

11    (*Reply* [Doc. 25] 1:6–10.)  Indeed, Plaintiff merely refers to its copyright infringement

12    claims to support its analysis of other claims but fails to address Defendants' arguments.

13    (*Opp'n* [Doc. 20] 23:9, 23:13, 25:17–18, 26:2.)  The Court acknowledges this failure and

14    also takes into account the success of Defendants' preemption argument.  See Foster v.

15    City of Fresno, 392 F.Supp. 2d at 1146–47; Stichting, 802 F.Supp. 2d at 1132; see also

16    Civ. L.R. 7.1(f)(3)(b).  Defendants' motion to dismiss the copyright infringement claim is

17    **GRANTED** with prejudice.

18    ## 2.    Vicarious Copyright Infringement and Contributory Copyright

19    ## Infringement Claims

20    Defendants assert that Plaintiff's "contributory and vicarious infringement claims

21    are derivative to the direct infringement claim and fail for the same reasons."  (*Mot. to*

22    *Dismiss* [Doc. 11-1] 19:21–23.)  The Court agrees.  Where a copyright infringement

23    claim is dismissed, secondary liability claims (e.g., vicarious copyright infringement and

24    contributory copyright infringement) do not exist.  See Perfect 10, Inc. v. Amazon.com,

25    Inc., 508 F.3d 1146, 1169 (9th Cir. 2007); A&M Records, Inc. v. Napster, Inc., 239 F.3d

26    1004, 1013 n.2 (9th Cir. 2001).  Therefore, the Court also **GRANTS** Defendants' motion

27    to dismiss both secondary copyright infringement claims with prejudice.

28

20-CV-1782 W (BGS)

**D.** <u>**Violation of California Computer Data Access and Fraud Act**</u>

Defendants argue that Plaintiff makes "fact-barren and vague allegations" under the California Computer Data Access and Fraud Act ("CCDAFA") and that the claim should therefore be dismissed.  (*Mot. to Dismiss* [Doc. 11-1] 21:6.)  The Court agrees.  Plaintiff merely restates the language of the California Penal Code and fails to state facts to constitute a valid claim under the CCDAFA.  (*Compl.* ¶¶ 163–165.)  As such, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's CCDAFA claim.

**E.** <u>**Fraud Claims**</u>

**1.** <u>**Fraud Based on Intentional Misrepresentation**</u>

Defendants argue that Plaintiff's claim of fraud based on intentional misrepresentation fails because (1) the economic loss doctrine bars the claim and (2) Plaintiff fails to state a claim for fraud.  (*Mot. to Dismiss* [Doc. 11-1] 22:12, 23:23.)  Defendants also argue that Plaintiff has conceded all its claims for fraud by failing to respond to or address in its Opposition Defendants' argument that the economic loss doctrine bars such claims.  (*Reply* [Doc. 25] 2:16–3:7.)  Nevertheless, the Court will address the claims' deficiencies.

An intentional misrepresentation claim requires "(1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) actual and justifiable reliance, and (5) resulting damage." <u>Daniels v. Select Portfolio Servicing, Inc.</u>, 246 Cal.App. 4th 1150, 1166 (2016).  California's economic loss doctrine bars fraud claims that "take[] the allegations underpinning a straightforward claim for breach of a commercial contract and recast them as torts." <u>JMP Secs. LLP v. Altair Nanotechnologies Inc.</u>, 880 F.Supp. 2d 1029, 1042–43 (N.D. Cal. 2012).  Plaintiff's claim is not similar enough to its breach of contract claim for the economic loss doctrine to bar recovery.  Plaintiff's claim of fraud based on intentional misrepresentation is based on allegations that Dahlin intentionally misrepresented himself when he (1) "communicated to Slate by email that he was very interested in working

12

for/with Slate" in March 2020, prior to being hired full-time at Slate, and (2) in May 2020 when Dahlin "informed Slate in a Slack message that he was optimistic that Slate could build 'something solid and scalable' with him on Slate's transactional team." (*Compl.* ¶¶ 171–72.)  By contrast, Plaintiff's claim for breach of contract is based on the argument that Dahlin violating the agreement to "not compete with Slate or use Slate's trade secret information or its confidential business and proprietary information for Dahlin's benefit or to the detriment of Slate."  (*Compl.* ¶ 201.)

However, courts have consistently ruled that opinions and "general statements of optimism" are not actionable to constitute misrepresentation.  See <u>Mueller v. San Diego Ent. Partners, LLC</u>, 260 F.Supp. 3d 1283, 1296 (S.D. Cal. 2017 G. Curiel) (holding that "predictions of future events are ordinarily considered nonactionable expressions of opinion"); <u>Glen Holly Ent., Inc. v. Tektronix, Inc.</u>, 100 F.Supp. 2d 1086, 1096–97 (C.D. Cal. 1999) (holding that general statements of optimism are "non-actionable puffery").  Dahlin's alleged statements were merely "general statements of optimism" that do not constitute a valid misrepresentation claim, thus failing the first element of an intentional misrepresentation claim.  The Court **GRANTS** Defendants' motion to dismiss the fraud based on intentional misrepresentation claim.

### 2.    Fraud Based on Negligent Misrepresentation

Defendants make the same arguments for dismissing Plaintiff's fraud based on negligent misrepresentation.  (*Mot. to Dismiss* [Doc. 11-1] 22:12, 23:23.)

Here, Plaintiff in its Opposition merely states a paragraph of case law but offers no analysis of facts.  (*Opp'n* [Doc. 20] 14:10–20.)  Additionally, "[t]he elements of a claim for negligent misrepresentation are nearly identical [to a claim for intentional misrepresentation].  Only the second element is different, requiring the absence of reasonable grounds for believing the misrepresentation to be true instead of knowledge of its falsity." <u>Daniels</u>, 246 Cal.App. 4th at 1166.  The distinction in the second element does not negate Plaintiff's failure to establish an actual misrepresentation in the first

20-CV-1782 W (BGS)

place.  As such, the Court **GRANTS** Defendants' motion to dismiss the fraud based on negligent misrepresentation claim.

### 3.    Fraudulent Concealment

Defendants make the same arguments for dismissing Plaintiff's fraudulent concealment claim as both its intentional and negligent misrepresentation claims.  (*Mot. to Dismiss* [Doc. 11-1] 22:12, 23:23.)  Fraudulent concealment requires that:

> (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage.

Burch v. CertainTeed Corp., 34 Cal.App. 5th 341, 348 (2019).

Here, Defendants argue that Plaintiff's claim fails because it lacks facts that constitute a concealment or suppression of material fact.  (*Mot. to Dismiss* 25:9.)  The Court agrees.  Plaintiff's only allegations for fraudulent concealment are that (1) "Dahlin intentionally failed to disclose to Slate that he was getting poached by Slate's client, ClickUp, in May 2020" and that (2) "[i]n June 2020, Dahlin disclosed to Slate that he was resigning from his employment with Slate, but intentionally failed to disclose that he was leaving Slate to start employment with Slate's client, ClickUp."  (*Compl.* ¶¶ 190–91.)  To Plaintiff's first allegation, Defendants point out that one week after Brummette asked Dahlin if he was interested in working for ClickUp, Dahlin informed DuFord on May 21, 2020, of ClickUp's proposal.  (*Id.* ¶¶ 66, 71.)  As to Plaintiff's second allegation, Defendants point out that during a June 21, 2020, FaceTime call, "Dahlin informed Mr. Weiner that ClickUp offered Dahlin a job as in-house attorney" and that he "intended to take the job with ClickUp."  (*Id.* ¶¶ 94–95.)

20-CV-1782 W (BGS)

1    Plaintiff contradicts itself and fails to adequately state facts that constitute

2    concealment or suppression of a material fact.  As such, the Court **GRANTS** Defendants'

3    motion to dismiss the claim of fraudulent concealment.

4

5    ### F.    Breach of Contract Claim

6    Plaintiff argues that Dahlin breached the NDA by violating the agreement that

7    Dahlin "would not compete with Slate or use Slate's trade secret information or its

8    confidential business and proprietary information for Dahlin's benefit or to the detriment

9    of Slate."  (*Compl.* ¶ 201.)  Defendants assert that Plaintiff's breach of contract claim

10   against Dahlin fails because California law prohibits employers from contractually

11   precluding its employees from seeking employment in the employee's trade, profession,

12   or business pursuant to California Business and Professions Code section 16600.  (*Mot.*

13   *to Dismiss* 26:24–27:3.)

14   Although Defendants are correct in arguing that Plaintiff may not restrain Dahlin

15   from seeking future employment under section 16600, Plaintiff also argues that Dahlin

16   breached his contract due to his alleged misuse of trade secrets and confidential business

17   and proprietary information.  (*Compl.* ¶ 201.)  Defendants have already successfully

18   argued that Plaintiff failed to plead facts that establish a valid trade secret to constitute a

19   misappropriation of trade secrets claim.  However, "[t]rade secrets are defined by statute,

20   but terms such as confidential and proprietary information are defined by the contract.

21   Thus, a defendant may breach a contract for disclosing confidential information that does

22   not constitute a trade secret."  Albert's Organics, Inc. v. Holzman, 445 F.Supp. 3d 463,

23   476 (N.D. Cal. 2020).  The language in the NDA contains nearly identical language to

24   that in Albert's Organics.  See id.  As such, the Court finds that Plaintiff has adequately

25   pled a breach of contract claim.  Defendants' motion to dismiss the breach of contract

26   claim is **DENIED**.

27   //

28   //

### G.   Breach of the Covenant of Good Faith and Fair Dealing Claim

Defendants argue that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails because it is "duplicative of Slate's breach of contract claim." (*Mot. to Dismiss* [Doc. 11-1] 29:5.)  Generally, breach of the covenant of good faith and fair dealing claims must be distinguishable from breach of contract claims.  See Careau & Co. v. Security Pac. Bus. Credit, Inc., 222 Cal.App. 3d 1371, 1395 (1990).

> If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged facts, simply seek the same damages or other relief already claimed in a companion contract of action, they may be disregarded as superfluous as no additional claim is actually stated.

Id.

Here, Plaintiff claims that Dahlin breached the covenant of good faith and fair dealing "when he utilized Slate's trade secrets and confidential business and proprietary information to engage in a business relationship with Slate's client ClickUp." (*Compl.* ¶ 208.)  Similarly, Plaintiff alleges that Dahlin materially breached the agreement in the NDA that Dahlin "would not compete with Slate or use Slate's trade secret information or its confidential business and proprietary information for Dahlin's benefit or to the detriment of Slate." (*Id.* ¶ 201.)  The Court finds the analysis in Careau instructive and finds that the similarity between Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing allegations is such that no additional claim is actually stated.  The Court **GRANTS** Defendants' motion to dismiss the claim of breach of the covenant of good faith and fair dealing.

### H.   Breach of the Duty of Loyalty Claims

#### 1.   Breach of the Duty of Loyalty

Defendants argue that Plaintiff's breach of the duty of loyalty claim is preempted by CUTSA as a matter of law. (*Mot. to Dismiss* [Doc. 11-1] 11:25–26.)  "It's no longer the case in California that a claim for . . . breach of duty of loyalty based upon the

16

misappropriation of trade secrets would survive even though both claims require proof of 'additional elements' like a relationship of trust or confidence." Mattel, Inc. v. MGA Ent., Inc., 782 F.Supp. 2d 911, 986 (C.D. Cal. 2011). The California Court of Appeals has held that CUTSA "supersedes any claim 'based on the same nucleus of facts as the misappropriation of trade secrets claim,' even though the superseded claim may seek 'something more.'" Id. (quoting K.C. Multimedia, Inc. v. Bank of Am. Tech. and Operations, Inc., 171 Cal.App. 4th 939, 958 (2009)).

Plaintiff argues that Dahlin breached his duty of loyalty by "misappropriating Slate's trade secrets and confidential business and proprietary information for the purpose of accessing and using such information to compete with Slate." (*Compl.* ¶ 212.) In Plaintiff's alleged claim of misappropriation of trade secrets under CUTSA, Plaintiff states that Dahlin "misappropriated . . . trade secrets . . . [by] utiliz[ing] Slate's contract documents and other work-product, as well as Slate's client information." (*Id.* ¶ 121.) Here, Plaintiff uses nearly identical language to that of its misappropriation of trade secrets claim. Thus, the Court finds the aforementioned authorities persuasive and rules that CUTSA preempts Plaintiff's breach of the duty of loyalty claim because it is based on the same nucleus of facts as its misappropriation of trade secrets claim. See Mattel, 782 F.Supp. 2d at 986. The fact that the information in question was found not to be a valid trade secret is irrelevant to this finding. See id. at 986–87. As such, the Court **GRANTS** Defendants' motion to dismiss the breach of the duty of loyalty claim.

### 2.     Aiding and Abetting Breach of Duty of Loyalty

Defendants argue that Plaintiff's aiding and abetting breach of the duty of loyalty claim fails for the same reasons. (*Mot. to Dismiss* [Doc. 11-1] 13:13–15.) "UTSA supersedes both the breach of fiduciary duty and aiding and abetting breach of fiduciary duty counter-claims in their entirety." Mattel, 782 F.Supp. 2d at 988.

Here, the aiding and abetting breach of the duty of loyalty claim is premised on identical facts to both the breach of duty of loyalty claim and the misappropriation of trade secrets claim. For the same reasons that the breach of duty of loyalty claim

17

fails, the Court also **GRANTS** Defendants' motion to dismiss the claim of aiding and abetting the breach of the duty of loyalty.

## I.   <u>Interference Claims</u>

### 1.   **Intentional Interference with Contractual Relations**

Defendants seek to dismiss Plaintiff's claim for intentional interference with contractual relations because the claim is based on the same facts as its misappropriation claim and is thus preempted by CUTSA.  (*Mot. to Dismiss* [Doc. 11-1] 13:25–14:4.)

> Under California law, the elements for the tort of intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

<u>United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.</u>, 766 F.3d 1002, 1006 (9th Cir. 2014) (internal quotation marks and citation omitted).  An interference of contract claim is preempted when the purported conduct derives from the same nucleus of facts as a misappropriation of trade secrets claim.  <u>K.C. Multimedia</u>, 171 Cal.App. 4th at 961.

Here, Plaintiff alleges that the valid contract that Defendants had knowledge of and subsequently breached was the NDA between Slate and Dahlin regarding "the terms of his employment and the use of Slate's trade secrets and confidential business and proprietary information." (*Compl.* ¶ 221.)  Certainly, the misappropriation of trade secrets constitutes the "gravamen" of Plaintiff's interference with contractual relations claim because the alleged breach focuses entirely on the allegation that Dahlin misappropriated trade secrets.  Therefore, CUTSA preempts the claim.  The Court **GRANTS** Defendants' motion to dismiss the intentional interference with contractual relations claim.

### 2.   **Negligent Interference with Contractual Relations**

18

Defendants also argue that Plaintiff's negligent interference with contractual relations should be dismissed for the same reasons as stated above. (*Mot. to Dismiss* [Doc. 11-1] 13:25–14:4.) However, California courts do not recognize a cause of action for negligent interference with contractual relations, but rather default to a cause of action for negligent interference with prospective economic advantage. See Fifield Manor v. Finston, 54 Cal.2d 632, 636 (1960); J'Aire Corp. v. Gregory, 24 Cal.3d 799, 807 (1979). See also LiMandri v. Judkins, 52 Cal.App. 4th 326, 349 (1997); Davis v. Nadrich, 174 Cal.App. 4th 1, 421 (2009); Duste v. Chevron Prods. Co., 738 F.Supp. 2d 1027, 1038 (N.D. Cal. 2010).

Based on precedent, the Court **GRANTS** Defendants' motion to dismiss the negligent interference with contractual relations claim with prejudice.

### 3.     Intentional Interference with Prospective Economic Relationship

Defendants move to dismiss Plaintiff's claim for intentional interference with prospective economic relationship on the same grounds as its previous interference claims. (*Mot. to Dismiss* [Doc. 11-1] 13:25–14:4.) A successful claim for intentional interference with prospective economic relationship requires

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

CRST Van Expedited, Inc. v. Werner Enters., 479 F.3d 1099, 1108 (9th Cir. 2007).

Here, the analysis mirrors that of Plaintiff's intentional interference with contractual relations claim. Plaintiff asserts that Defendants' intentional acts to disrupt the economic relationship were "the use of Slate's trade secrets and confidential business and proprietary information." (*Compl.* ¶ 235.) As such, the Court finds that the gravamen of Plaintiff's claim is the misappropriation of its trade secrets and is thereby

19

preempted by CUTSA.  The Court, therefore, **GRANTS** Defendants' motion to dismiss the intentional interference with prospective economic relationship.

### 4.    Negligent Interference with Prospective Economic Relationship

Defendants also move to dismiss Plaintiff's negligent interference with prospective economic relationship based on the same arguments as its other interference claims. (*Mot. to Dismiss* [Doc. 11-1] 13:25–14:4.)  The elements for such a claim are:

> (1) the existence of an economic relationship between the plaintiff and a third party containing the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's knowledge (actual or construed) that the relationship would be disrupted if the defendant failed to act with reasonable care; (4) the defendant's failure to act with reasonable care; (5) actual disruption of the relationship; and (6) economic harm proximately caused by the defendant's negligence.

Redfearn v. Trader Joe's Co., 20 Cal.App. 5th 989, 1005 (2018).

Here, Plaintiff alleges that Defendants disrupted the economic relationship between Slate and Dahlin based on ClickUp's "use of Slate's trade secrets and confidential business and proprietary information." (*Compl.* ¶ 243.)  As such, the Court finds that the misappropriation of trade secrets is the gravamen of the instant claim. Defendants' motion to dismiss the negligent interference with prospective economic relationship is **GRANTED**.

### 5.    Interference of Contract in an At-Will Relationship

Defendants also move to dismiss Plaintiff's claim of interference of contract in an at-will relationship for the same reason as discussed above.  (*Mot. to Dismiss* [Doc. 11-1] 13:25–14:4.)  An action for interference of contract in an at-will relationship is analyzed "under the same California standard applicable to claims for intentional interference with prospective economic advantage . . . [where] defendant engaged in an independently wrongful act . . . that induced an at-will employee to leave the plaintiff."  Reeves v. Hanlon, 33 Cal.4th 1140, 1152–53 (2004).

For the same reason that Plaintiff's intentional interference with prospective economic advantage claim fails, the Court **GRANTS** Defendants' motion to dismiss the interference of contract in an at-will relationship claim.

### J.   Unjust Enrichment Claim

Defendants argue that Plaintiff's unjust enrichment claim is preempted by CUTSA because it also relies on the "same nucleus of alleged facts" as its trade secrets claim. (*Mot. to Dismiss* [Doc. 11-1] 15:20–22.)  The Court agrees.  Plaintiff's argument rests solely on the claim that Dahlin was unjustly enriched via "misappropriation of Slate's trade secrets and confidential business and proprietary information." (*Compl.* ¶¶ 261, 263.)  Based on its own words, Plaintiff's unjust enrichment claim rests on the same nucleus of facts as its misappropriation of trade secrets claim.  See Mattel, 782 F.Supp. 2d at 986.  Also, Plaintiff has not pled sufficient facts in its Complaint to argue that the unjust enrichment claim is "independent and based on facts distinct from the facts that support the misappropriation claim" such that CUTSA would not preempt the unjust enrichment claim.  See Angelica Textile Servs., Inc. v. Park, 220 Cal.App. 4th 495, 506 (2013).  The Court **GRANTS** Defendants' motion to dismiss the unjust enrichment claim.

### K.   Unfair Business Practice Claim

Defendants argue that Plaintiff's unfair business practice claim fails for the same reasons that its unjust enrichment claim does.  (*Mot. to Dismiss* [Doc. 11-1] 15:20–22.)  Here, Plaintiff alleges that Dahlin "breached his duty of loyalty owed to Slate, and he intentionally interfered with Slate's business relationship with its client, as alleged above," and that those acts "constituted unlawful and unfair business practices." (*Compl.* ¶ 265.)  Plaintiff, in its assertion, refers to the allegations made in its prior claim for unjust enrichment, which is entirely based on the "misappropriation of Slate's trade secrets." (*Compl.* ¶¶ 261, 263.)  As such, Plaintiff's claim here is based on the same

nucleus of alleged facts, albeit indirectly, as its misappropriation of trade secrets claim. Defendants' motion to dismiss the unfair business practice claim is **GRANTED**.

## IV.    CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the motion to dismiss [Doc. 11.]  The Court denies Defendants' motion to dismiss the breach of contract claim.  Regarding the claims of copyright infringement, vicarious copyright infringement, contributory copyright infringement, and negligent interference with contractual relations, there will be no leave to amend.  Plaintiff will have leave to amend the Complaint for all other claims.  The first amended complaint must be filed, if at all, within 30 days of this order.

**IT IS SO ORDERED**.

Dated:  July 7, 2021

_____
Hon. Thomas J. Whelan
United States District Judge

20-CV-1782 W (BGS)